Maren DAHL, Personal Representative of the Estate of Stale Dahl, Deceased, Appellant in No. 79–2596,

Anne Marie DRANGELD, Personal Representative of the Estate of Olan Drangeld, Deceased, Appellant in No. 79–2597,

Bjord Turid FOSEN, Personal Representative of the Estate of Jan Fosen, Deceased, Appellant in No. 79–2598,

Ingunn KOPPERGARD, Personal Representative of the Estate of Age Koppergard, Deceased, Appellant in No. 79–2599,

v.

UNITED TECHNOLOGIES CORPORATION.

Nos. 79–2596 to 79–2599.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) May 19, 1980.

Decided Aug. 7, 1980.

As Amended Nov. 12, 1980.

Marvin I. Barish, Jack L. Gruenstein, Philadelphia, Pa., John Biggs III, Wilmington, Del., Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., Biggs & Battaglia, Wilmington, Del., for appellants.

Rodney M. Layton, Allen M. Terrell, Jr., William J. Wade, Richards, Layton & Finger, Wilmington, Del., for appellee.

Submitted Under Rule 12(6), May 19, 1980

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Four wrongful death actions arising from a helicopter crash in the icy waters of the North Atlantic filed by Norwegian citizens provide the legal setting for our consideration of whether the United States District Court for the District of Delaware erred in dismissing the actions on the ground of *forum non conveniens.* The district court determined that trial of the suits properly belonged in the Norwegian courts because this would best serve both the private interests of the parties and the public interest in the lawsuit. All plaintiffs appeal the dismissals. We affirm.

### I.

On November 23, 1977, a helicopter designed and manufactured by the defendant, United Technologies Corp. (UTC), crashed into the North Sea off the coast of Norway during a storm. At the time of the crash, the helicopter was carrying employees of the Phillips Petroleum Company to a drilling rig in the North Sea. Plaintiffs' decedents were passengers aboard the helicopter. Tragically, there were no survivors of the crash and the cause of the crash is in dispute.

The helicopter involved was a model S–61N manufactured in 1970 by the Sikorsky Division of UTC in Connecticut. It was sold on November 10, 1970, by United Aircraft International, Inc., a subsidiary of

UTC, to All Nippon Airways Co., Ltd., a Japanese corporation, pursuant to a lease agreement with option to purchase. The helicopter was delivered to All Nippon on January 5, 1971, in Connecticut. In accordance with the lease agreement, UTC assisted with the routine maintenance of the helicopter for a three-month period following delivery. This was the last contact that UTC, or its subsidiaries, had with the helicopter. In April 1976, All Nippon sold the aircraft to Helikopter Service A/S, a Norwegian company that only does business in Norway. The latter owned and operated the helicopter when it crashed.

The actions involved in this appeal were commenced in the District Court of Delaware on August 23, 1978. UTC moved to dismiss the complaints on the ground of *forum non conveniens*. The motion was granted by Chief Judge Latchum on June 9, 1979, *Dahl v. United Technologies Corp.*, 472 F.Supp. 696 (D.Del.1979), and this appeal followed.

## II.

■ The principle of *forum non conveniens* permits a court to decline jurisdiction even though venue and jurisdiction are proper, on the theory that for the convenience of the litigants and the witnesses, the action should be tried in another judicial forum. See 1 Moore's Federal Practice ¶ 0.145[2] at 1581–82 (2d ed. 1979). The principle originated in state courts concerned with misuse of venue but was formally recognized in the federal courts in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). *Forum non conveniens* presupposes the existence of two judicial forums each possessing jurisdiction and venue over the action, but posits that one forum may resist invocation of its jurisdiction when trial of the action

would more appropriately proceed in the other forum. Courts know from experience that the selection of a forum is sometimes dictated not only by the search for justice but the temptation of the plaintiff "to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 507, 67 S.Ct. at 842. Therefore, it is a matter of the district court's discretion whether or not to decline jurisdiction on *forum non conveniens* grounds and "experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses of discretion." *Id.* at 508, 67 S.Ct. at 843. Our task, therefore, is to determine whether the district court abused its discretion in renouncing jurisdiction and declaring that the Norwegian courts should be the judicial forum for these lawsuits.

■ Initially we note that the district court found that Norway would be a suitable forum to try these cases. Under Delaware conflict of laws rules, Norwegian law applies to plaintiffs' tort causes of action. Thus, choice of the Norwegian forum would not alter the substantive law to be applied to those causes of action. Nor is there, as plaintiffs contend, a jurisdictional impediment to resolution of this lawsuit in the Norwegian forum. Plaintiffs' assertion that UTC "is not really present in Norway" is merely a conclusory characterization of the facts having no legal significance. *See* note 1 *infra*. Moreover, UTC has in these proceedings expressly consented to personal jurisdiction in Norway and the district court has expressly ordered that dismissal of these actions be conditional on UTC's consent to jurisdiction. We find no error in this ruling and accordingly agree with Chief Judge Latchum that Norway is a suitable forum.[1]

1. The plaintiffs argue that the availability of the alternate forum must be tested as of the time of the filing of the action, not the date of the district court's decision. It is true that under 28 U.S.C. § 1404, governing transfers between United States district courts, availability is tested as of the time of the filing of the action. *See Hoffman v. Blaski*, 363 U.S. 335,

80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Nevertheless, there are differences between the statute and common-law *forum non conveniens*. *See, e. g., Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). The Second Circuit has held that under the common law, the proper time to test availability is the time the decision on *forum non conveniens* is

We must therefore consider whether the district court was correct in concluding that Norway was the more appropriate forum. In *Gulf Oil, supra,* the Supreme Court enunciated various considerations which district courts should examine in deciding whether to decline jurisdiction on the basis of *forum non conveniens.* These concerns may be roughly broken down into factors relating to the private interests of the litigants and those relating to public interest in the outcome and administration of the case. Even though we may not overturn the district court's order absent an abuse of discretion, we must keep in mind that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. at 843.

### A. Private Interests

The first set of interests which we must review are those relating primarily to the private litigants. The Supreme Court in *Gulf Oil* enumerated various factors pertaining to the private interests which the court should weigh in a motion to dismiss on *forum non conveniens* grounds.

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.

330 U.S. at 508, 67 S.Ct. at 843. Turning to the first of these considerations, the ease of access to sources of proof, the district court in this case concluded:

No evidence relevant to the claims asserted by the plaintiffs is located in Delaware. These actions arose out of a crash of a Norwegian owned and operated helicopter in the territorial waters of Norway. The recovered parts of the wreckage are located in Norway. The helicopter was based and maintained in Norway and its maintenance, flight and operational records are located there. The Norwegian Civil Aviation Administration is currently conducting an investigation into the probable cause of the accident.

In addition to the demonstrative and documentary evidence just mentioned, a substantial amount of the testimonial evidence will come from Norwegians. Testimony from persons who knew the decedents will be relevant to the damages issue. Among the potential liability witnesses are employees of Helikopter Service A/S, employees from other firms in Norway that serviced or made installations on the helicopter, and the Norwegian government officials who investigated the accident. *UTC could not compel the attendance of these Norwegian witnesses at trial in Delaware. Nor could it compel production here of any real or documentary evidence in Norway.*

472 F.Supp. at 700 (emphasis added). On appeal, plaintiffs contend that the sources of proof they seek are in the United States. They claim that the theory of the suit will be the "faulty design and/or manufacture" of the helicopter by UTC. All the records concerning UTC's design and manufacture, as well as the engineers and production workers, are in the United States. All testing of the aircraft was done in the United States and it was approved in accordance with FAA regulations. All records dealing

made. *See Schertenleib v. Traum,* 589 F.2d 1156, 1161–64 (2d Cir. 1978); *Alcoa Steamship Co. v. M/V Nordic,* 636 F.2d 860, (2d Cir. 1980) (en banc). In this case we need not decide whether availability of the alternate forum must be tested at the time of filing or the date of the district court's decision because jurisdiction was available in Norway at the time of filing as well as the present time. Under Norwegian law, UTC is subject to jurisdiction on three bases: (1) if it submits itself to jurisdiction; (2) if it has assets in Norway; or (3) if it has a representative present in Norway and service is made upon the representative there. The record indicated that UTC has "several million dollars worth of F100 engine components located in Norway" and does business in Norway. Thus, suit could have originally been brought in Norway.

with governmental approval of the aircraft are in the United States.

UTC, however, has agreed to make witnesses and documents under its control available to the plaintiffs in Norway should this case be dismissed. Thus, plaintiffs will have access to all records germane to their strict liability theory. Plaintiffs respond, however, that not all relevant material is under UTC's control; e. g., various witnesses may no longer be UTC employees.

We believe that on balance the district court did not err in concluding that access to materials and witnesses militated in favor of a Norwegian forum. Although evidence relating to a strict liability theory appears to be largely in the United States, evidence relating to negligence is largely if not entirely in Norway and UTC cannot compel the attendance of Norwegian witnesses or Norwegian real or documentary evidence in Delaware. Undoubtedly, as in most wrongful death actions, both theories may be relevant at trial. UTC's offer to provide all relevant materials and witnesses under its control plus its inability to subpoena Norwegian documents and witnesses for trial in the United States point towards trial in Norway. Furthermore, UTC's last contact with this helicopter was seven years prior to the crash, during which period it had been in service with other owners outside of the United States. In addition, the crash which forms the basis of these actions occurred in the territorial waters of Norway. These facts also support the district court's renunciation of jurisdiction. Undoubtedly, no matter where the case is tried there will be some difficulty in access to materials, but we believe that more relevant materials and easier access to them will occur if the case is tried in Norway with UTC's agreement to provide all necessary materials under its control.

Another factor favoring trial in Norway is UTC's inability to implead Helikopter Service A/S, the Norwegian corporation which owned and operated the helicopter at the time of the crash. Helikopter Service does not do business outside of Norway and it is therefore not subject to personal jurisdiction in the United States. In *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir. 1974), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976), the court indicated that "[t]he inability to implead other parties directly involved in the controversy is a factor which weighs against the retention of jurisdiction . . . ."

We must consider as well whether forum choice of one forum over the other will alleviate practical problems, making trial of the case expeditious and inexpensive. The major practical problem in this case is the translation of documents. The district court found that "the need to translate documents and the testimony of witnesses from Norwegian to English and to interpret Norwegian law" militates in favor of dismissal. On appeal, plaintiffs assert that most of the relevant Norwegian documents have already been translated into English whereas if the trial is held in Norway, most of the relevant documents would need to be translated from English to Norwegian. It is apparent that wherever the trial is held, translation and application of foreign law may pose linguistic difficulties. In its brief to this court, UTC argues that "a trial court can interpret UTC's consent to make its personnel and documents available in Norway at its own expense as including the obligation to translate. The trial court may order UTC to translate the evidence."

Although the district court's order makes no provision for the translation of documents from English into Norwegian, we anticipate that in view of the foregoing representation by UTC to this court, the district court will amend its order dismissing the action and explicitly place the burden of translation of the necessary evidentiary documents on UTC.

### B. Public Interests

The Supreme Court in *Gulf Oil* observed that "[f]actors of public interest also have place in applying the doctrine [of *forum non conveniens*]." 330 U.S. at 508, 67 S.Ct. at 843. The Court then touched upon various public concerns which it believed it must weigh in deciding whether to decline jurisdiction.

Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

*Id.* at 508–09, 67 S.Ct. at 843.

This first factor of local public interest in the forum state clearly militates in favor of trial in Norway. All of the plaintiffs are Norwegian citizens. The only contact that Delaware has with this case is that it is UTC's state of incorporation. Indeed, UTC's principal place of business is in Connecticut. We therefore conclude that the commitment of Delaware judicial time and resources to this case is not justified by any nexus Delaware has with what is essentially a Norwegian case.

Another public interest is the application of local law. In *Gulf Oil* the Court stated: "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 509, 67 S.Ct. at 843. Plaintiffs' complaint is broken down into one count based on tort and one count of breach of warranty. The district court, applying Delaware conflict of laws rules, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), determined that Norwegian law would govern the tort claim. This holding is not contested on appeal and indeed we believe Norwegian law would apply as it was the place "where the tort arose," *Friday v. Smoot*, 8 Storey (58 Del.) 488, 211 A.2d 594, 595 (1965), which Delaware has consistently interpreted to mean the place where the injury occurred. *See, e.g., Paoletto v.*

*Beech Aircraft Corp.*, 464 F.2d 976, 979 (3d Cir. 1972).

The second count based on products liability poses a more difficult problem. The district court concluded that under Delaware choice of law principles, a claim for breach of warranties is governed by the law of the place where the sale occurred, in this instance, Connecticut. The presence of a claim involving American law might counterbalance the factor of Norwegian law applicable to the tort count, but the district court concluded that under the Connecticut Uniform Commercial Code, plaintiffs' breach of warranty claim would probably be barred by the statute of limitations. There was also the distinct possibility that the claim, even if not time-barred, was nonetheless without merit because of waivers of warranty liability in the sales contract. The court therefore concluded that dismissal may not be avoided by the assertion of a palpably specious and legally baseless claim. *See Noto v. Cia Secula di Armanento*, 310 F.Supp. 639, 649 (S.D.N.Y. 1970).

We have reviewed the district court's conflict of laws analysis and we cannot say that the court erred in concluding that the factor of applicable substantive law favored dismissal of the actions. We believe that Norwegian substantive law will predominate the trial of this case and that the mere presence of a count pleaded under Connecticut law but which may have little chance of success does not warrant a different conclusion. If we were to hold otherwise, the plaintiffs could avoid dismissal on *forum non conveniens* grounds by the inclusion of a substantive count based on American law regardless of the merits of that claim.

The last public factor raised is a general national interest in the case. The plaintiffs vigorously assert that the United States has a vested interest in the outcome of this suit, for all aircraft that are manufactured for sale here must be certified by the federal government. In effect, the integrity of the aircraft certification process may be put in issue which justifies retention of an American forum. However, UTC points out that

Norway has an equal interest in applying its Aviation Act and products liability law to this case. UTC argues that the Norwegian Aviation Act was passed, in part, due to concern in Norway over accidents occurring within its borders and over its territorial waters. Thus, Norway's interest in the case is equal if not superior to the United States' and the national interest factor does not shift the balance in favor of Delaware as the forum.

■■■ We believe that on balance the public interest factors also militate in favor of dismissal. This lawsuit has little connection to Delaware and we believe the general national interest in aircraft regulation is not sufficient by itself to warrant retention of jurisdiction over an action when the other factors favor dismissal. It is difficult to see how Delaware, as compared with Norway, has a more dominant interest in this case and we accordingly hold that the district court did not abuse its discretion in dismissing the case on *forum non conveniens* grounds.[2]

### III.

The judgment of the district court will be affirmed. Costs taxed against appellants.

---

**2.** We perceive nothing inconsistent in this result with our recent decision in *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir. 1980). In the latter case the issue of *forum non conveniens* in Pennsylvania was not raised by defendants until after they had successfully obtained a statutory transfer of the proceedings from California to Pennsylvania. In California, Piper Aircraft, the principal defendant, did not urge that jurisdiction over the case belonged in Scotland but argued that the action be transferred to Pennsylvania for the convenience of the witnesses. Piper asserted that such transfer to Pennsylvania "appears to overwhelm other factors, in view of the apparent theories of liability as against the defendants." *See* 630 F.2d at 156. A reading of the *Reyno* opinion reveals that the defendants' prior inconsistent position in the California court on the transfer motion weighed heavily in this court's resolution of their motion for dismissal on grounds of *forum non conveniens* in Pennsylvania. Furthermore, *Reyno* concluded that Pennsylvania law applied to the strict liability issue and that Pennsylvania's strict liability standard "would serve that state's interest in the regulation of manufacturing." In this action, we believe that Norwegian substantive law will predominate the trial of the case and that Delaware has little, if any, interest in the outcome.