**GATES LEARJET CORPORATION and Gates Learjet Export Corporation, Plaintiffs/Appellants,**

v.

**James B. JENSEN, Jr.; Ricardo S. Tomacruz; Learjet Philippines, Inc., a corporation; James B. Jensen & Co., Inc., a corporation, and Hamix International, Ltd., a corporation, Defendants/Appellees.**

No. 83–2643.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1984.

Decided Sept. 27, 1984.

William H. Tinney, Michael J. Rusing, Bilby, Shoenhair, Warnock & Dolph, Tucson, Ariz., for plaintiffs-appellants.

D. Michael Mandig, John F. Molloy, Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C., Tucson, Ariz., for defendants-appellees.

Before CHOY, PREGERSON and REINHARDT, Circuit Judges.

CHOY, Circuit Judge:

The issues on this appeal are (1) whether the district court properly dismissed counts two and three of appellant's complaint for lack of personal jurisdiction, and (2) whether the district court's dismissal of counts one and four for *forum non conveniens* was an abuse of discretion. On both issues, we reverse and remand to the district court.

## I.  BACKGROUND

Gates Learjet Corporation and Gates Learjet Export Corporation ("Gates") entered into an international distributorship agreement with Learjet Philippines, Inc. ("LPI") in 1978. Gates, principally located in Tucson, Arizona, manufactures executive aircraft known as Learjets. LPI is a Philippine corporation. The original agreement was for a period of one year but was renewed for an additional two years and four months.

James B. Jensen, Jr., a United States citizen with residence in California and the Philippines, is the president of LPI and James B. Jensen & Co. ("Jensen, Inc."), a California corporation located in San Francisco. The negotiations for the international distributorship agreement occurred both in Tucson, when Jensen visited Gates, and by telephone, correspondence, and telex from Tucson to Manila and San Francisco. The agreement provides that it "is an Arizona agreement and that it shall be governed by the laws of the State of Arizona of the United States of America in all matters, included but not limited to, validity, obligation, interpretation, construction, performance and termination."

During the time the agreement was in effect, Jensen and Ricardo S. Tomacruz, the vice-president and general manager of LPI and a citizen and resident of the Philippines, made several trips to Tucson on behalf of LPI. The purposes of Jensen's visits, which numbered at least seven between February 1978 and September 1981, included arrangement of an aircraft sale, meetings with Gates' employees, and attendance at Gates' international distributor conference and the delivery of several airplanes. LPI also entered into several airplane purchase agreements with Gates in Tucson. Each agreement contained a choice of law provision specifying Arizona and a choice of forum provision that the "courts of Arizona shall have exclusive jurisdiction to hear and determine all claims, disputes, actions, or suits which may arise hereunder." In addition, LPI and Jensen, Inc. purchased over $200,000 in spare parts from Gates.

In 1981, Gates did not renew the international distributorship agreement with LPI. On February 3, 1982, Gates filed a four-count complaint in an Arizona state court against Jensen, Tomacruz, LPI, Jensen, Inc., and Hamix International Ltd., a Hong Kong corporation ("defendants"). Count one of the complaint alleges unauthorized use of Gates' tradenames and trademarks. Count two alleges abuse of process arising out of the seizure by Philippine authorities of a Gates' aircraft and the jailing of its pilot. Count three alleges interference with contractual relations between Gates and customers in the Philippines. Count four alleges a conspiracy to make unauthorized use of Gates' tradename and trademark. The action was removed to a federal district court for diversity of citizenship.

On September 23, 1982, the United States District Court for the District of Arizona dismissed counts two and three for lack of personal jurisdiction as to one of the defendants, Jensen, Inc. *Gates Learjet Corp. v. Jensen*, No. CIV 82–139 (D.Ariz. Sept. 23, 1982) (*Gates Learjet I*). After this partial dismissal, the defendants answered the complaint and filed a six-count counterclaim. The counterclaim alleges improper termination of the distributorship agreement, unjust enrichment, interference with contractual relations, and defamation. It added three parties to the litigation: B.S. Stillwell, Jane Doe Stillwell, and Stillwell Aviation Australia Party, Ltd. On May 31, 1983, the district court clarified its earlier dismissal order and dismissed counts two and three as to all of the defendants.

On October 5, 1983, after 18 months of trial preparation, the defendants challenged the convenience of the forum. The defendants allege that two civil actions pending in Philippine courts make the same allegations as the action brought by Gates in Arizona. On November 1, 1983, the district court conditionally dismissed counts one and four of the complaint under the doctrine of *forum non conveniens*. The court dismissed Gates' complaint on the following conditions: 1) The Philippine courts accept jurisdiction; 2) the defendants submit to that jurisdiction; 3) the defendants make their employees available for process and as witnesses; 4) the defendants waive any newly arisen statute of limitations defenses; 5) the defendants recognize any Philippine court judgment; and 6) all discovery and products may be used in any action in the Philippines, subject to objections which could be made in this court. *Gates Learjet Corp. v. Jensen*, No. CIV 82–139, slip op. at 11 (D.Ariz. Nov. 1, 1983) (*Gates Learjet II*).

## II. DISCUSSION

### A. Personal Jurisdiction

█ The district court dismissed counts two and three of Gates' complaint for lack of personal jurisdiction. As the party seeking to invoke the jurisdiction of the court, Gates has the burden of establishing personal jurisdiction. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).[1] Arizona's long-arm statute establishes personal jurisdiction over nonresidents to the maximum extent permitted by due process. *Houghton v. Piper Aircraft Corp.*, 112 Ariz. 365, 542 P.2d 24, 26 (1975). Due process requires the defendants to have certain minimum contacts with the forum so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Colonial Leasing Co. v. Pugh Brothers Garage*, 735 F.2d 380, 383 (9th Cir.1984). To satisfy this due process requirement, Gates may prove "general jurisdiction" or "limited jurisdiction."

### 1. General Jurisdiction

█ A sufficient relationship between the defendants and Arizona exists to support general jurisdiction if Gates can demonstrate that the defendants' activities within Arizona are "substantial" or "continuous and systematic." *See Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d at 1287. We review the district court's holding that Jensen "does not transact business within Arizona on a continuous or systematic basis, and does not provide the kind of contacts that would sustain exercise of general jurisdiction." *Gates Learjet I*, slip op. at 7.

Gates cites five activities to prove that defendants' contacts with Arizona were "continuous and systematic" and "substantial": 1) Jensen solicited the distributorship agreement in Arizona; 2) the defendants visited Tucson a number of times; 3) the airplane purchase agreements between Gates and Jensen contained an Arizona choice of law and forum provision; 4) the defendants purchased spare parts from Gates in Tucson; and 5) the defendants sent many letters and telexes and made numerous telephone calls to Tucson.

---

1. Gates contends that the defendants waived any objection to personal jurisdiction when they invoked the jurisdiction of this court by asking for affirmative relief in a permissive counterclaim. The courts are divided on the issue of whether the assertion of a permissive counterclaim should constitute a waiver of a jurisdictional defense. *Compare North Branch Products, Inc. v. Fisher*, 284 F.2d 611, 615 (D.C.Cir. 1960) (waiver) *and Merz v. Hemmerle*, 90 F.R.D. 566, 569 (E.D.N.Y.1981) (waiver) *with Neifeld v. Steinberg*, 438 F.2d 423, 427 (3d Cir.1971) (no waiver) *and Lomanco, Inc. v. Missouri Pacific Railroad Co.*, 566 F.Supp. 846, 851 (E.D.Ark. 1983) (no waiver). *See generally* Annot., 17 A.L.R.Fed. 390 (1973). Although this court has held that the defendant's assertion of a compulsory counterclaim "does not constitute a waiver of any jurisdictional defense he previously or concurrently asserts," *Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9th Cir.1967), we have not decided whether the assertion of a permissive counterclaim constitutes a waiver.

As to defendant Jensen, Inc., this case is easily resolved because Jensen, Inc. brought a motion to dismiss for lack of personal jurisdiction prior to the filing of the answer and counterclaim. *See Neifeld v. Steinberg*, 438 F.2d at 428 n. 10

(clearly no waiver when jurisdictional defenses raised by motion prior to filing of answer). The other defendants, however, did not raise the jurisdictional defense until they filed their answer and counterclaim. Nevertheless, we hold that the filing of a permissive counterclaim does not constitute a waiver of a personal jurisdiction defense asserted in the same pleading. Rule 12(b) of the Federal Rules of Civil Procedure implicitly authorizes a defendant to join a jurisdictional defense with a counterclaim without waiving this defense. The rule permits a defendant to raise jurisdictional defenses by motion or by answer. If we were to find a waiver when a defendant files a permissive counterclaim in the same pleading in which he asserts jurisdictional defenses, the purposes behind Rule 12(b)—to avoid the delay caused by successive motions and pleadings and to reverse the prior practice of asserting jurisdictional defenses by "special appearances"—would be thwarted. *See Neifeld v. Steinberg*, 438 F.2d at 429. Moreover, courts have noted that when the rule makers wanted to attach "waiver" consequences in certain situations, they did so explicitly. *See id.* at 428 & n. 11; *Lomanco, Inc. v. Missouri Pacific Railroad Co.*, 566 F.Supp. at 850.

We must decide whether these contacts constitute sufficient activity in Arizona to conclude that the defendants "may in fact be said already to be 'present' there." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 413 (9th Cir. 1977). Moreover, we must focus upon the "economic reality" of the defendants' activities rather than a mechanical checklist. *See Thos. P. Gonzalez Corp. v. Consejo Nacional*, 614 F.2d 1247, 1254 (9th Cir. 1980) (quoting *Foster v. Mooney Aircraft Corp.*, 68 Cal.App.3d 887, 137 Cal.Rptr. 694, 697 (1977)).

We conclude that the "economic reality" here is that defendants' activities in Arizona were not "continuous and systematic" or "substantial". Jensen's solicitation of the distributorship agreement in Arizona and the defendants' visits to Tucson do not constitute "conducting business" in Arizona. *See Rocke v. Canadian Automobile Sport Club*, 660 F.2d 395, 399 (9th Cir.1981). Making telephone calls and sending telexes and letters to Tucson are not activities which support a finding of general jurisdiction. *See Thos. P. Gonzalez Corp. v. Consejo Nacional*, 614 F.2d at 1254. Furthermore, the choice of forum provision in the airplane purchase agreement applies only to disputes arising out of those agreements. Significantly, the defendants did not establish a regular place of business in Arizona. *See Rocke v. Canadian Automobile Sport Club*, 660 F.2d at 399. These contacts in their totality do not demonstrate sufficient activity in Arizona to support general jurisdiction. Defendants' activities in Arizona were more occasional than continuous, and more infrequent than systematic.

### 2. Limited Jurisdiction

If a defendant's activities are not so pervasive to subject them to general jurisdiction, this court makes the following evaluation in determining whether there is limited jurisdiction:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

Gates clearly satisfies the first prong of this test. Not only did Jensen solicit the distributorship agreement in Arizona, but also the agreement specifically provides that Arizona law governs it. The distributorship agreement, therefore, directly invokes the benefits and protections of Arizona laws. *See O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1177 (7th Cir.1971); *Alchemie International, Inc. v. Metal World, Inc.*, 523 F.Supp. 1039, 1054 (D.N.J.1981). Given these circumstances, Jensen should have reasonably anticipated "being haled into court" in Arizona. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Prong two of the *Data Disc* inquiry requires that each claim "arises out of or results from" the defendants' forum related activity. 557 F.2d at 1287. The district court had the most trouble with this part of the test, stating:

The claims of counts two and three, sounding in tort law, cannot be said to arise out of the distributorship agreement. These claims result from the conduct of defendant outside the state, and are too attenuated a contact to justify exercise of personal jurisdiction.

*Gates Learjet I*, slip op. at 10. After examining the record, we conclude that the district court erred in finding that the claims in counts two and three are "too attenuated a contact" to justify the exercise of personal jurisdiction.

Count two of Gates' complaint alleges that the defendants filed two civil

actions and one criminal complaint in the Philippines which caused the seizure of one of Gates' Learjets and the arrest of one of its employees. Count two alleges further that these actions were meant to harass, intimidate and threaten Gates and constitute an abuse of process. At first blush, this count may appear to be unrelated to the distributorship agreement. An examination of the complaint that the defendants filed in the Philippines on December 1, 1981, however, dispels any doubt that this count "arises out of" the distributorship agreement.

The first cause of action in the Philippines complaint alleges that Gates' nonrenewal of the distributorship agreement with the defendants was "clearly contrary to law, morals, good customs, public policy and public order." The second cause of action alleges "moral" and reputation damages for Gates' bad faith in refusing to renew the distributorship agreement. The third cause of action alleges wanton and fraudulent behavior in refusing to negotiate the renewal of the distributorship agreement. Thus, count two of Gates' complaint arose out of the distributorship agreement because its termination induced defendants' alleged harassment and intimidation of Gates. Count two was not too attenuated from the distributorship agreement to support a finding of limited jurisdiction.

We similarly conclude that count three of Gates' complaint satisfies the second prong of the *Data Disc* test. Count three alleges that the defendants interfered with Gates' contractual relations with its customers in the Philippines. This count also arises out of the distributorship agreement because its factual basis concerns whether Jensen improperly used Gates' tradenames contrary to the terms of the distributorship agreement.[2]

The third and final prong of the *Data Disc* inquiry requires a court's exercise of jurisdiction to be reasonable. 557 F.2d at 1287. This court has identified seven factors as pertinent to the reasonableness inquiry:

(A) the extent of the defendant's purposeful interjection into the forum state; (B) the burden of defending in the forum state; (C) the extent of the conflict with the sovereignty of the defendant's state; (D) the forum state's interest in adjudicating the dispute; (E) the most efficient judicial resolution of the controversy; (F) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (G) the existence of an alternative forum.

*Rocke v. Canadian Automobile Sport Club,* 660 F.2d 395, 399 (9th Cir.1981); *see Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir.1981). "These factors are not mandatory tests, each of which plaintiff must pass in order for a court properly to assume jurisdiction. Instead, the factors illuminate the considerations of fairness and due process set forth in *International Shoe,* 326 U.S. at 310 [66 S.Ct. at 154]." *Hedrick v. Daiko Shoji Co., Ltd., Osaka,* 715 F.2d 1355, 1359 (9th Cir.1983).

The application of these factors to this case convinces us that it would be reasonable to subject the defendants to the jurisdiction of the Arizona court. We consider each of the factors in turn.

Although not extensive enough to support general jurisdiction, the contacts of LPI, Jensen, and Tomacruz with Arizona are sufficient to demonstrate a purposeful interjection into the forum state. Jensen solicited an international distributorship agreement in Tucson, which contained a choice of law provision specifying Arizona.

---

**2.** Gates cites cases that interpret an Arizona attorney's fee statute and hold that tort claims arise out of a contract if they could not exist "but for" the contract. *See, e.g., Sparks v. Republic National Life Insurance Co.,* 132 Ariz. 529, 544, 647 P.2d 1127, 1141, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982).

Although these cases interpret the "arises out of" language in a manner that supports Gates' construction, Gates never demonstrates why this court, in applying a constitutional due process test, should adopt an Arizona court's interpretation of an irrelevant state statute.

Both Jensen and Tomacruz made several visits to the Gates' facilities and even accepted delivery of airplanes in Tucson. Moreover, these airplane purchase agreements contained choice of law and forum provisions, both of which specified Arizona. Thus, the terms of important contracts between Gates and the defendants demonstrate that the defendants had notice that they might be brought into a court in Arizona.

■ The burden on the defendants of defending in Arizona, as opposed to the Philippines, is potentially significant. Litigating abroad imposes significant inconveniences upon the party appearing in a foreign country. *Olsen By Sheldon v. Mexico,* 729 F.2d 641, 650 (9th Cir.1984). We nevertheless conclude that the burden on the defendants would not be substantial here, primarily because the defendants must litigate in Arizona anyway. The district court found personal jurisdiction as to counts one and four. The extra burden of defending counts two and three in Arizona, particularly in light of their connection to counts one and four, would be minimal.

■ The reasonableness of jurisdiction depends also in part upon the seriousness of the potential affront to the sovereignty of the defendants' state. A foreign nation presents a higher sovereignty barrier than that between two states within our union. *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d at 1272. Two of the three defendants named in counts two and three are residents of the Philippines. The government of the Philippines clearly has an interest in resolving disputes that involve its citizens. Nevertheless, we note that this factor is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court.

■ We examine next Arizona's interest in adjudicating this dispute. Arizona has a strong interest in ensuring that its citizens are fully compensated for their injuries, in part to protect the state's economic resources from unnecessary expenditures. *See Olsen By Sheldon v. Mexico,* 729 F.2d at 651.

■ At the current stage of the litigation, Arizona would appear to be the more efficient forum to resolve this dispute. Gates alleges, and defendants do not dispute, that discovery is completed and "this matter could be tried in a matter of weeks." In addition, although parts of counts two and three may require the application of Philippine law, the proof of both counts may also involve the application of Arizona law. For example, Gates may attempt to prove the unreasonableness of defendants' alleged actions in count two, in part, by demonstrating that Gates properly terminated the distributorship agreement, which proof would require the application of Arizona law. The district court in Arizona is the more efficient forum to resolve such interpretations of Arizona law. *See Hedrick v. Daiko Shoji Co., Ltd., Osaka,* 715 F.2d at 1359; *Raffaele v. Compagnie Generale Maritime,* 707 F.2d 395, 399 (9th Cir.1983); *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d at 1273.[3]

■ An Arizona court certainly provides Gates with the most convenient forum for seeking relief. Unlike the individual plaintiff in *Raffaele v. Compagnie Generale Maritime,* 707 F.2d at 399, both parties here involve corporate entities apparently with sufficient resources to defend in either country. We therefore give some, but not significant, weight to this factor.

■ The final factor we consider is the availability of an alternative forum. Gates alleges that it may not receive a fair trial in the Philippines because of the "well publicized violent upheavals" there. We note that the "appellants must carry the burden

---

**3.** The Philippines, of course, may be the more efficient forum to apply possible Philippine law questions. Nevertheless, we conclude that Arizona is the more efficient forum because the action is almost ready for trial in Arizona.

of proving the unavailability of an alternative forum." *Olsen By Sheldon v. Mexico*, 729 F.2d at 651. We cannot say that Gates has satisfied this burden. In light of the other factors, however, this factor is not dispositive.

■ After considering all the relevant factors, we conclude that, on balance, the exercise of limited personal jurisdiction over the defendants by a federal district court in Arizona is reasonable. The defendants' numerous visits to Tucson and Jensen's solicitation of the distributorship agreement there demonstrate a purposeful interjection into the state of Arizona. Moreover, defending counts two and three would not burden defendants significantly because they must litigate counts one and four in Arizona anyway. We place some, but not substantial, weight on the convenience to Gates of litigating this dispute in Arizona. Finally, Arizona has an interest in adjudicating this dispute and, at this stage of the litigation, it is the more efficient forum.

In weighing these factors, we are not convinced that adjudication of this dispute in Arizona will affront the sovereignty of the Philippines. Although the availability of an alternative forum supports the defendants' position, the other factors weigh more strongly in Gates' favor. The district court in its order did not weigh these factors, nor did it examine whether the exercise of personal jurisdiction would be reasonable. Under the *Data Disc* three-prong inquiry, therefore, the district court erred in dismissing counts two and three for lack of personal jurisdiction.

## B. Forum Non Conveniens

On November 1, 1983, the district court conditionally dismissed Gates' complaint under the doctrine of *forum non conveniens*. Because the district court had dismissed counts two and three for lack of personal jurisdiction one year earlier, this dismissal pertained only to counts one and four, which allege unauthorized use of Gates' tradenames and trademarks. The dismissal would require Gates to pursue relief in the Philippine courts.

Whether an action may be dismissed for *forum non conveniens* when jurisdiction is otherwise properly invoked is governed by the factors outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The Court divided these factors into "private interest" and "public interest" factors, each of which must be weighed by the district court. As this court has noted:

> The private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." ... The public interest factors include the administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Cheng v. Boeing Co.*, 708 F.2d 1406, 1409–10 (9th Cir.1983) (citations omitted), *cert. denied*, —— U.S. ——, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983).

■ If a district court properly analyzes and considers all relevant factors and its balancing of these factors is reasonable, its *forum non conveniens* dismissal "may be reversed only when there has been a clear abuse of discretion." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). A district court, therefore, abuses its discretion when it fails to balance the relevant factors. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir.1983). "Emphasis on the district court's discretion ... must not overshadow the central principle of the *Gilbert* doctrine that 'unless the balance is strongly in favor of the defendant, the

plaintiff's choice of forum should rarely be disturbed.'" *Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir.1981) (quoting *Gulf Oil Co. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843).

We conclude that the district court did not balance the important relevant factors. The balance of the public and private interest factors is not strongly in favor of the defendants. We therefore hold that the district court's dismissal of counts one and four for *forum non conveniens* was an abuse of discretion.

### 1. Private Interest Factors

■ The district court failed to examine at least two important and relevant private interest factors.[4] First, the district court did not recognize or consider in its balancing that Gates is a United States citizen and a resident of Arizona. A United States citizen has no absolute right to sue in a United States court. *Mizokami Brothers of Arizona, Inc. v. Baychem Corp.,* 556 F.2d 975, 977 (9th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978). The Supreme Court, however, has observed "that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno,* 454 U.S. at 255, 102 S.Ct. at 265; *see Koster v. Lumbermens Mutual Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947); *Paper Operations Consultants International, Ltd. v. SS Hong Kong Amber,* 513 F.2d 667, 672 (9th Cir.1975). Greater deference is due because "a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Piper Aircraft Co. v. Reyno,* 454 U.S. at 255 n. 23, 102 S.Ct. at 266 n. 23 (quoting *Koster v. Lumbermens Mutual Co.,* 330 U.S. at 524, 67 S.Ct. at 832).

■ The second relevant private interest factor the district court failed to examine is that the parties were ready for trial when it dismissed the complaint for *forum non conveniens.* The discovery deadline had passed; all documents needed for trial had been exchanged and/or identified; and all necessary trial documents were located in Tucson, Arizona. The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient. *Piper Aircraft Co. v. Reyno,* 454 U.S. at 256, 102 S.Ct. at 266; *La Seguridad v. Transytur Line,* 707 F.2d at 1307. That trial preparation had progressed nearly to the point of trial certainly was a relevant factor when the district court considered whether trial of the case in Arizona would have been more "easy, expeditious and inexpensive" than trial in the Philippines. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. Although no single factor is dispositive, we conclude that the district court's failure to weigh these private interest factors was an abuse of discretion.

■ We also observe that the private interest factors mentioned by the district court do not strongly support the defendants' position on *forum non conveniens.* The district court noted that "the vast majority of the witnesses reside in the Philippines ...." *Gates Learjet II,* slip op. at 9. The defendants, however, admit that the district court was not absolutely correct. In fact, 23 of the 44 witnesses, whom the parties designated in response to interrogatories, reside in the Philippines, which is hardly a "vast majority."

Furthermore, the district court improperly focused on the number of witnesses in each location. Instead, the court should have examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility

---

4. The district court correctly began its analysis with a determination of whether there exists an alternative forum. *See Piper Aircraft Co. v. Reyno,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22; *Cheng v. Boeing Co.,* 708 F.2d at 1410; *Pain v. United Technologies Corp.,* 637 F.2d 775, 784 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). The court

noted that a defendant's amenability to process in the other jurisdiction ordinarily satisfies this requirement. *See Gulf Oil Co. v. Gilbert,* 330 U.S. at 506–07, 67 S.Ct. at 842. We do not overturn the district court's finding of an alternative forum. That an alternative forum exists, however, is not dispositive in the balancing required in a *forum non conveniens* analysis.

and convenience to the forum. *See La Seguridad v. Transytur Line,* 707 F.2d at 1308–09; *Thomson & McKinnon v. Minyard,* 291 F.Supp. 573, 576 (S.D.N.Y.1968). We also note that a district court should keep in mind that "the increased speed and ease of travel and communication ... makes, especially when a key issue is the location of witnesses, no forum 'as inconvenient [today] as it was in 1947,'" when the Supreme Court decided *Gilbert. Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir.1981). We are not convinced that the court here properly considered and weighed this private interest factor. We therefore cannot give much deference to the district court's consideration of it.[5]

### 2. Public Interest Factors

In its consideration of public interest factors, the district court concluded that the Philippines "has a substantial interest in the outcome of the litigation." It reasoned that "most of the operating facts occurred in the Philippines," and that "[t]he controversies will require the application of Arizona law and Philippine law." *Gates Learjet II,* slip op. at 10. Public interest factors properly considered include "the local interest in having localized controversies resolved at home," and "the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action." *Cheng v. Boeing Co.,* 708 F.2d at 1410.

■■■ We nevertheless conclude that the district court's consideration of these public interest factors rested on a mistaken assumption about the applicable law and improperly ignored the advantages of an Arizona forum for the trial. In noting that both Philippine and Arizona law applied to this matter, the district court apparently considered all four counts of the Gates

complaint. The defendants' motion to dismiss for *forum non conveniens,* however, could pertain only to counts one and four because the court had already dismissed counts two and three for lack of personal jurisdiction.

Counts one and four allege unauthorized use and a conspiracy to make unauthorized use of Gates' tradename and trademark. These counts involve an interpretation of the international distributorship agreement entered into between Gates and LPI. Under the heading, "Post-Termination Actions," the distributorship agreement provides:

> The Distributor shall immediately discontinue the use of any trade names or trademarks referred to in Article III above and shall make no further use of the same nor any other name, title, expression or mark so nearly resembling such trade names or trademarks as to be deceptive in nature.

The distributorship agreement also specifically provides that it shall be governed by Arizona law. Thus, counts one and four apparently are contract actions that require the application of Arizona law, not Philippine law.[6]

■■■ In addition to making a mistaken assumption about the applicable law, the district court failed to weigh Arizona's interests in having the controversy "resolved at home." Arizona has a significant interest in interpreting its own laws. *See Cheng v. Boeing Co.,* 708 F.2d at 1411. Arizona also has an interest in protecting its companies from trademark infringement abroad to preserve the state's economic vitality. Although the situs of the alleged trademark and tradename infringement was the Philippines, it appears that Philippine law is not applicable. We therefore conclude that these public interest fac-

---

5. In its discussion of private interest factors, the district court also noted that "almost all of the acts alleged in the complaints and counterclaims occurred in the Philippines." This observation, however, seems to pertain to the Philippines' interest in the action, which is a public interest factor. If the district court was instead referring to the convenience of obtaining certain evidence, it failed to explain what evidence

was unavailable. As discussed above, most trial materials were located in Arizona at the time the district court dismissed counts one and four for *forum non conveniens.*

6. Defendants implicitly admit this point, conceding that Arizona law would apply to a contract action.

tors should not weigh heavily in defendants' favor. A proper understanding of the applicable law and the relative interests, in fact, suggests that Arizona has the more substantial interest in this litigation.

The district court particularly emphasized one public interest factor: the docket congestion of its court. It stated:

> Counsel have indicated that there are hundreds, if not thousands, of exhibits involved. There will be many witnesses testifying for both sides. The case will take weeks to try. The Tucson division of the District of Arizona is presently operating with two district judges. Normally there are three judges in the division. The two judges are handling all of the criminal calendar. Outside judges have been assigned to handle part of the civil calendar and it is contemplated that more help will be necessary in the future.

*Gates Learjet II*, slip op. at 10.

This factor also should not weigh heavily in defendants' favor. The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket. *See Starnes v. McGuire*, 512 F.2d 918, 932 (D.C.Cir.1974) (en banc); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3854 at 289–91 (1976); *see also Foster v. Litton Industries, Inc.*, 431 F.Supp. 86, 88 (S.D.N.Y.1977) (relative docket conditions accorded some, but not decisive, weight in transfer motions). The district court here observed only that its docket was congested; it did not determine whether a trial would be speedier in the Philippines. Even if it were, however, it is unfair for a court to subject a United States corporation to the courts of another country merely because plaintiff's home country courts are congested. The *forum non conveniens* doctrine should not be used as a solution to court congestion; other remedies, such as placing reasonable limitations on the amount of time each side may have to present evidence, are more appropriate.

We hold that the district court failed to consider relevant private and public interest factors and misconstrued others. The district court therefore abused its discretion. On balance, we conclude that the relevant private and public interest factors support the district court's retention of jurisdiction and the dismissal of defendants' *forum non conveniens* motion.

## III. CONCLUSION

Gates cannot demonstrate that the defendants had sufficient activity in Arizona to establish general jurisdiction. Under the *Data Disc* three-prong inquiry into limited jurisdiction, however, we hold that the district court erred in dismissing counts two and three for lack of personal jurisdiction. As to the district court's dismissal of counts one and four for *forum non conveniens*, we find an abuse of discretion. The district court's orders are therefore

REVERSED AND THE CASE IS REMANDED.