Jesse HALL, Plaintiff,

v.

NATIONAL BASKETBALL
ASSOCIATION, Defendant.

Civ. A. No. 86–2202.

United States District Court,
D. Kansas.

Jan. 9, 1987.

Jesse Hall, pro se.

Gregory Bernard King, King & Favors, Kansas City, Kan., for plaintiff.

Douglas C. McKenna, Watson, Ess, Marshall & Enggas, Olathe, Kan., Howard L. Ganz, Proskauer, Rose, Goetz & Mendelsohn, New York City, Leonard Singer, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This is an action brought by the plaintiff, Jesse Hall, where he alleges that the National Basketball Association [NBA] violated Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Plaintiff contends that these violations occurred when the NBA declined to hire him as a referee and decided not to retain him on a list of active prospects for such a position. The NBA is an unincorporated association with its principal office located in New York City, New York. The plaintiff is a resident of Kansas City, Kansas. This matter comes before the court on the defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, for improper venue. Plaintiff has filed a memorandum opposing defendant's motion and, in the alternative, moving for transfer of venue pursuant to 28 U.S.C. § 1406(a).

In evaluating a motion to dismiss for lack of personal jurisdiction, several well-established principles must be followed. The Tenth Circuit recently reiterated these principles as follows:

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant.... Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing.... The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.... If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party....

*Behagen v. Amateur Basketball Assoc.*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985) (citations omitted).

In order to rule on the defendant's motion to dismiss, some time must be spent detailing the nature of the NBA's operations and the plaintiff's contacts with the NBA. The NBA is an unincorporated association consisting of twenty-three professional basketball teams. None of the twenty-three member teams maintain offices in or play NBA games in Kansas. However, prior to the 1985–86 NBA season, the Sacramento (California) Kings were located in Kansas City, Missouri. The NBA and its member teams comprise the premier professional basketball league in the United States. Each NBA member team plays a pre-season and regular season schedule of games against other NBA member teams. Regular season, playoff and championship games are held principally at one of the twenty-three member team's home arenas. Since the 1978–79 season, no regular season NBA game has been played in the state of Kansas. However, the plaintiff contends that one pre-season game in 1983— between the then Kansas City Kings and the Detroit Pistons—was held in Wichita, Kansas.

On or about July 30, 1979, the plaintiff received a letter from the NBA at his home in Hollywood, Florida. This letter indicated that the plaintiff had been recommended to the NBA as an official by a third party. Plaintiff was informed of the procedure to follow if he was interested in applying for an officiating position with the NBA. After completion of the application process, the NBA invited the plaintiff to a tryout camp for officials which was held in Chicago, Illinois. On or about October 15, 1980, the NBA sent a letter to the plaintiff at his home in Hollywood, Florida, informing him that he had been selected to officiate in the Continental Basketball Association (CBA) for the 1980–81 season. This letter also indicated that the NBA and the CBA had an agreement to develop and train future CBA officials.

During the 1980–81, 1981–82 and 1982–83 seasons, the plaintiff worked as an official in the CBA. None of the CBA games at which the plaintiff officiated took place in Kansas. In the summer of 1982, the plaintiff moved from Hollywood, Florida, to Kansas City, Kansas. It appears that the move was made at the plaintiff's own initiative; there is no evidence that either association had requested the move to Kansas. While working for the CBA, the plaintiff received correspondence through the mail

concerning numerous employment matters such as playing rules, schedules of officiating assignments and reimbursement of travel expenses. Plaintiff's exhibits show that such correspondence was always transmitted on letterhead from the NBA league office. Plaintiff's exhibits also show that there were no other CBA or NBA officials living in Kansas.

In the fall of 1983, the plaintiff was employed by the NBA as a temporary official during a labor dispute between the NBA and its regular NBA officials. The plaintiff worked approximately thirty-eight pre-season and season games, none of which were played in Kansas. The plaintiff was terminated from this temporary position in December of 1983, when the labor dispute was settled. Plaintiff has made no complaint as to this termination. Plaintiff also was involved with a 1983 Pro-Am Summer League in Kansas City, Kansas, sponsored and subsidized in part by the NBA.

On April 16, 1984, the plaintiff received a letter from the NBA advising him that he would not be retained on the NBA's active prospect list. Defendant contends that the employment decision was based upon an evaluation of plaintiff's performance during his temporary employment as an official in the NBA in the fall of 1983 and his performance as a CBA official and at NBA tryout camps. On May 11, 1984, the plaintiff filed a complaint with the Equal Employment Opportunity Commission [EEOC] in New York, alleging that he was denied employment and removed from the active roster list on the basis of his race. The plaintiff also alleged that he had been retaliated against for providing a notarized statement, which was presented in an EEOC charge by another black official. The plaintiff received a right-to-sue letter from the EEOC dated January 24, 1986. This action was subsequently filed on April 29, 1986.

A two-step analysis is usually implemented to determine whether the court has personal jurisdiction over this defendant. The court must first determine whether it has jurisdiction under the Kansas long-arm statute, K.S.A. 60–308(b). Even when the action is based on federal question jurisdiction, the state long-arm statute must be considered in determining whether service upon a nonresident was proper under Rule 4(e) of the Federal Rules of Civil Procedure. *See Triple A Partnership v. MPL Communications, Inc.,* 629 F.Supp. 1520, 1521–23 (D.Kan.1986); *Mas Marques v. Digital Equip. Corp.,* 490 F.Supp. 56, 59 (D.Mass.), *aff'd,* 637 F.2d 24 (1st Cir.1980). The Kansas long-arm statute provides in part:

Any person, whether or not a citizen or a resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person ... to the jurisdictions of the courts of this state *as to any cause of action arising from the doing of any of these acts* :

(1) Transaction of any business within this state; ....

K.S.A. 60–308(b) (emphasis added). The long-arm statute has been liberally construed to the limits of due process. *Carrothers Const. Co. v. Quality Service & Supply, Inc.,* 586 F.Supp. 134, 136 (D.Kan. 1984).

Once long-arm jurisdiction is established, the court must then decide if the exercise of jurisdiction would violate the constitutional guarantee of due process. The key concern under due process is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In determining if it is fair to subject a nonresident defendant to a suit in the forum state, the court must consider the "quality and nature" of the defendant's activity. *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1967, 56 L.Ed.2d 132 (1978). Moreover, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the

benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

The court must first determine if the Kansas long-arm statute is applicable in this case to extend service of process over the nonresident defendant. The plaintiff argues that the long-arm statute applies since the defendant has transacted business in this state. The plaintiff points to the one pre-season NBA game played in Wichita, Kansas, in 1983. The plaintiff also emphasizes that a NBA member team—the former Kansas City Kings—sold some of their game tickets through an outlet in Johnson County, Kansas. The plaintiff has also presented correspondence from the NBA league office regarding his employment by the CBA. Finally, the plaintiff contends that the defendant transacted business in Kansas by sponsoring and subsidizing a NBA/Pro-Am summer league in 1983 in Kansas City, Kansas.

■ A very broad and liberal reading of K.S.A. 60–308(b)(1) could lead to the conclusion that the NBA was transacting business in Kansas. The plaintiff has not established how the sale of some Kansas City Kings game tickets through a Kansas outlet is transacting business by the NBA. However, the subsidizing of a Pro-Am summer league which played an unknown number of games in Kansas in 1983, plus the single 1983 pre-season game played in Wichita, could be construed as transacting business in this state. However, the plaintiff has provided no evidence of a nexus between the NBA's employment decision and these 1983 activities. The mere fact that the NBA provided or subsidized referees for these activities is insufficient to establish the requisite connection between the NBA's activities in Kansas and the employment decision of which the plaintiff complains. Key events were the plaintiff's performance in NBA games during his temporary employment in 1983, in CBA games and at NBA tryout camps. None of these events took place in Kansas. Plaintiff has likewise failed to establish any connection between the ticket sales by the Kings and the NBA's action.

■ The plaintiff also argues that his receipt of CBA assignment schedules and expenses, transmitted through the NBA league office, indicates that the NBA was doing business or transacting business in Kansas. However, the plaintiff is the only CBA official who resides in Kansas; furthermore, there are no NBA officials who reside in Kansas. Clearly, the act of mailing such materials to the plaintiff fails to constitute "continuous and systematic" transaction of business to subject the defendant to general jurisdiction for claims unrelated to its activities. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th Cir.1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). This activity is also insufficient to constitute the transaction of business in this state. Mailing the plaintiff schedules and payments for his job duties completely performed outside this state does not fall within the concept of "transacting business." The NBA and CBA do not receive a benefit from the plaintiff's residence in Kansas that would rise to the level of transacting business when the plaintiff performed all of his services outside the forum.

Since the plaintiff's claim is unrelated to the isolated contacts the NBA has with this state, the court finds the Kansas long-arm statute, K.S.A. 60–308(b), does not reach this defendant. Thus, the court lacks personal jurisdiction over this defendant.

■ Even if the Kansas long-arm statute would be applicable to this defendant, the court finds that the exercise of personal jurisdiction over this defendant would violate due process as guaranteed by the fourteenth amendment. A three-prong test is used to evaluate whether a nonresident defendant has sufficient minimum contacts with the forum to extend limited jurisdiction over the nonresident.

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in

the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Gates Learjet Corp. v. Jensen,* 743 F.2d at 1331. As discussed in the analysis of the long-arm statute, the plaintiff has failed to establish a prima facie nexus between the NBA's limited activities in Kansas and its decision to remove the plaintiff from its active prospects list. Therefore, the plaintiff has failed to establish the second element of "limited" jurisdiction.

Furthermore, in evaluating the NBA's "relationship" with the plaintiff, the court finds that in no way has the NBA acted to purposefully avail itself of conducting activities within Kansas to invoke the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239. Instead, it was the unilateral activity of the plaintiff that resulted in the defendant's correspondence received in Kansas. The CBA established an employment relationship with the plaintiff when he resided in Florida. By agreement, the NBA and the CBA jointly managed the referee development program. It was apparently the plaintiff's unilateral decision to move to Kansas, which led to the receipt of NBA correspondence in Kansas. The plaintiff has not made any showing that he performed any of his regular duties as a CBA official out of his home in Kansas. Furthermore, neither the NBA or CBA could have expected the plaintiff to perform any of his officiating duties in Kansas since there were no CBA teams located in Kansas until the 1986–87 season, long after the act of which the plaintiff complains. Therefore, the NBA's contacts in Kansas were not of the type that it "should reasonably anticipate being haled into court in Kansas" on a Title VII claim merely because the plaintiff chose to live in Kansas.

In construing the disputed facts in favor of the plaintiff, some type of employment relationship existed between the parties.

However, other jurisdictions have found that personal jurisdiction was lacking over an employer in suits by employees living in jurisdictions other than where they worked. In *Rogers v. Icelandair/Flugleider, Int'l.,* 522 F.Supp. 670 (E.D.Pa.1981), an action for wrongful termination was dismissed for lack of personal jurisdiction over the former employer. The court held that exercising jurisdiction over this defendant would violate due process since the employer's only contacts with the state were occasional charter flights and the plaintiff's receipt of his termination notice in Pennsylvania. *Id.* at 672–73. In *Gagner v. Parsons & Whittemore, Inc.,* 450 F.Supp. 1093 (E.D. Pa.1978), the court dismissed an employee's claim for compensation for lack of jurisdiction over the defendant. This plaintiff voluntarily chose to live in Pennsylvania and commuted to New York to work. The only contacts the defendant had with Pennsylvania were correspondence and telephone conversations *during the contractual* negotiations. The court held these insufficient to confer personal jurisdiction when these communications were not "numerous, continuous or of a substantial quality." *Id.* at 1096. *See also Guthrie v. Ciba-Geigy, Ltd.,* 620 F.Supp. 91 (D.Conn.1984) (Title VII action); *Latham v. Ryan,* 373 So.2d 242 (La.App.1979) (suit for compensation).

For the foregoing reason, the court finds that neither the Kansas long-arm statute nor the due process clause allows this court to exercise jurisdiction over the defendant.

■ Plaintiff's response requested that the court transfer the action if personal jurisdiction was lacking. Title 28, United States Code, Section 1406(a), provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). Section 1406(a) is broad enough to authorize a transfer "whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman,*

369 U.S. 463, 466, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962). The court finds that it is in the interest of justice to transfer this action. The court also finds that this action "could have been brought" in the Western District of Missouri. Therefore, this action is transferred to that district.

IT IS THEREFORE ORDERED that the plaintiff's motion to transfer is granted and the clerk is directed to transfer this action to the United States District Court for the Western District of Missouri.