**Jayne REID–WALEN, Gary Walen, Appellants,**

v.

**Leroy HANSEN, Irene Hansen, d/b/a Yellow Bird Sea–Tel, Appellees.**

**No. 89–3000.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1990.

Decided May 15, 1991.

Rehearing and Rehearing En Banc Denied Aug. 13, 1991.

Robert T. Bergin, Jr., West Palm Beach, Fla., for appellants.

John H. Quinn, III, St. Louis, Mo., for appellees.

Before LAY, Chief Judge, HEANEY and TIMBERS,* Senior Circuit Judges.

LAY, Chief Judge.

Jayne Reid–Walen, a citizen of Minnesota, seeks damages from Leroy and Irene Hansen, citizens of Missouri, for injuries she sustained while vacationing at the Yellowbird Sea–Tel ("Yellowbird"), a cluster of cottages in Negril Beach, Jamaica owned and run by the Hansens. According to the amended complaint, Reid–Walen was swimming near the beach area of the Yellowbird when she was struck by a motorboat driven by a Jamaican citizen, not associated with the Hansens, who was soliciting boat rides from guests of the Yellowbird.[1] Reid–Walen bases her suit on Jamaican law, alleging

---

* The HONORABLE WILLIAM H. TIMBERS, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, sitting by designation.

**1.** Although not in the written record on appeal, Reid–Walen's counsel stated at oral argument in this case that the plaintiff and her husband had stayed at the Yellowbird previously, and called directly to Jamaica to make reservations for this visit. On previous occasions, Reid–Walen apparently had called the Hansens in Missouri to make reservations.

that the Hansens violated their common law duty of care by failing to prevent motorboats from traveling through the area the Hansens had designated for swimming by their guests. She also alleges the Hansens violated two Jamaican statutes, the Occupiers' Liability Act and the Beach Control Act, which allegedly required defendants to provide a lifeguard and to place buoys around an area for swimming.

The suit was originally filed in the United States District Court for the Southern District of Florida. The defendants moved for dismissal, arguing that venue was improper. The district court found venue in Florida was improper but that venue would have been proper in Missouri, the residence of the Hansens. Accordingly, the court transferred the case to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a) (1988). The defendants then filed a motion to dismiss in that court on the ground of forum non conveniens. The district court granted the defendants' motion, and this appeal followed. We reverse the judgment of the district court.

## ANALYSIS

### I. Introduction

#### A. *The District Court's Decision*

The district court observed that in ruling on a motion to dismiss based on forum non conveniens, it must "balance the preference accorded plaintiff's choice of forum with the burdens of litigating at an inconvenient venue." *Reid–Walen v. Hansen,* 715 F.Supp. 270, 271 (E.D.Mo.1989). The court then considered the private and public interest factors first enunciated by the Supreme Court in *Gulf Oil Corp. v. Gilbert,*

330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). These factors are applied in all forum non conveniens cases. *See, e.g. Mizokami Bros. of Arizona v. Mobay Chem. Corp.,* 660 F.2d 712, 717–18 (8th Cir.1981).

The district court concluded that all relevant events, except Reid–Walen's hospitalization in Florida, occurred in Jamaica, and that all of the occurrence witnesses resided in Jamaica, making their attendance in Missouri prohibitively expensive. 715 F.Supp. at 271. The court also found that the substantive law of Jamaica would govern the dispute. Further, the court concluded it would be a burden to impose jury duty on a Missouri community with no significant relationship to the litigation. Although recognizing that Reid–Walen's United States citizenship and the fact that the defendants resided in Missouri five months of the year militated against dismissing the suit, the court found these factors not "particularly weighty" because other "numerous factors" pointed to Jamaica as the most convenient forum. *Id.* at 272. Subject to the defendants' consent to submit to the jurisdiction of the Jamaican courts, the district court dismissed the suit.[2]

#### B. *Standard of Review*

The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens. *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 43–44 (3d Cir. 1988); *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1164 (5th Cir. 1987) (en banc), *partially vacated on other grounds,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989).[3] Trial courts have

---

**2.** The doctrine of forum non conveniens presupposes that an adequate alternative forum is available to hear the case. This is a two-part inquiry: availability and adequacy. *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1165 (5th Cir.1987) (en banc), *partially vacated on other grounds,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). An alternative forum is available if all parties are amenable to process and come within the jurisdiction of the forum. *Id.;* 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3828 (2d ed.

1986). An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). As the district court did in this case, courts must always make a finding that these conditions are met before dismissing an action based on forum non conveniens.

**3.** The Supreme Court has held that a defendant moving for dismissal based on forum non conveniens "must provide enough information to

broad discretion in deciding a motion to dismiss based on forum non conveniens, and when the district court "has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). A trial court's decision to dismiss on the ground of forum non conveniens will be overturned only for abuse of discretion. *Mobay Chem. Corp.,* 660 F.2d at 718. An abuse of discretion may occur when the district court fails to consider one or more of the important private or public interest factors, does not hold the defendants to their burden of persuasion on all elements of the forum non conveniens analysis, or has clearly erred in weighing the factors the court must consider. *Lacey,* 862 F.2d at 43. Finally, "[e]mphasis on the district court's discretion ... must not overshadow the central principle of the *Gilbert* doctrine that 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 342 (8th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984) (citations omitted).

We believe the district court failed to give proper deference to the plaintiff's

enable the District Court to balance the parties' interests," although it need not submit overly detailed affidavits to carry its burden. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 258, 102 S.Ct. 252, 267, 70 L.Ed.2d 419 (1981).

**4.** One of the primary contentions raised by the dissent is that we do not adequately defer to the trial judge's decision in this case. Simply because an appellate court finds that a trial judge erred in granting a motion to dismiss on the grounds of forum non conveniens does not mean that this court has substituted its judgment for that of the district court. In all due respect to the dissent, this is an old cliche, hardly deserving of exhaustive analysis. Of course, we reverse the district court with great reluctance, but when the district court has not applied the correct legal principles to the issue, we are left with no other proper alternative. We agree with the Second Circuit that

Although the Supreme Court has emphasized the broad discretion of the district courts in

choice of forum and failed to give proper weight to the fact that both the plaintiff and the defendants were United States citizens. In addition, the district court did not properly address other key factors and erred in weighing several other private and public interest factors.[4]

We turn to an analysis of the district court's decision, in light of the *Gilbert* factors.

## II. Private Interest Factors

### A. *Residence of the Parties and Deference to Plaintiff's Forum Choice*

■ At the outset, it is important to note that in forum non conveniens cases involving a potential reference to a foreign court, the relevant distinction is whether or not the plaintiff who has selected the federal forum is a United States citizen, not whether the plaintiff resides in the particular district where the case was brought. *Interpane Coatings v. Australia & New Zealand Banking Group Ltd.,* 732 F.Supp. 909, 915 (N.D.Ill.1990). In other words, the "home" forum for the plaintiff is any federal district in the United States, not the particular district where the plaintiff lives.[5]

■ The Supreme Court has emphasized that trial courts must give deference to a plaintiff's forum choice. In *Gilbert,* the Court stated that "unless the balance is

deciding whether to dismiss on the basis of *forum non conveniens,* there would be little purpose in Congress giving this Court a power of review if it were not a meaningful one. A meaningful power of review is the right to determine whether the district court reached an erroneous conclusion on either the facts or the law.

*Irish Nat. Ins. Co., Ltd. v. Aer Lingus Teoranta,* 739 F.2d 90, 92 (2d Cir.1984) (citations omitted).

**5.** A plaintiff, however, is not free to select a particular federal district in order to harass or vex the defendant or to select a forum "at a most inconvenient place for an adversary, even at some inconvenience to himself." *Gilbert,* 330 U.S. at 507, 67 S.Ct. at 842. Of course, if the plaintiff selects a federal district that is itself truly inconvenient for the defendant, the defendant can request a transfer to another federal district under 28 U.S.C. § 1404. There is no contention made here that the plaintiff is seeking to harass or vex the defendant by litigating this suit in the Eastern District of Missouri.

strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508, 67 S.Ct. at 843. Although such choice is not to be given dispositive weight, jurisdiction should be declined only in "exceptional circumstances." *Id.* at 504, 67 S.Ct. at 841; *see also Piper Aircraft,* 454 U.S. at 255, 102 S.Ct. at 265.[6] It also generally is acknowledged that citizens should rarely be denied access to courts of the United States.[7] In *Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), the Court found that an American plaintiff could not be deprived of his or her home forum except when oppressive and vexatious to the defendant "out of all proportion to plaintiff's convenience." *Id.* at 524, 67 S.Ct. at 832; *see also Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1334–35 (9th Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.,* 556 F.2d 975, 977 (9th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978).

Judicial concern for allowing citizens of the United States access to American courts has been tempered by the expansion and realities of international commerce. When an American corporation doing extensive foreign business brings an action for injury occurring in a foreign country, many courts have partially discounted the plaintiff's United States citizenship. As the Ninth Circuit recently reiterated:

In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a Unit-

ed States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.

*Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.,* 918 F.2d 1446, 1450 (9th Cir.1990) (quoting *Baychem Corp.,* 556 F.2d at 978); *see also Lehman,* 713 F.2d at 346 (quoting *Founding Church of Scientology v. Verlag,* 536 F.2d 429, 435 (D.C. Cir.1976)).[8] In this case, the plaintiff, Jayne Reid–Walen, was not engaging in business abroad. Instead, she was enjoying "a personal vacation of a few days' duration in a vacation spot" located near the United States and owned by the Hansens. *Lehman,* 713 F.2d at 347.

A significant factor in this case is that the defendants are U.S. citizens and the action was transferred to their home district, the Eastern District of Missouri. In this unusual situation, where the forum resident seeks dismissal, this fact should weigh strongly against dismissal. *See Manu Int'l, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 67 (2d Cir.1981) (finding that district judge abused discretion in dismissing case in which defendant's home office was located in forum); *Verlag,* 536 F.2d at 435 (finding of "great significance" that both plaintiff and defendant are residents of the U.S.); *see also* Stewart, *Forum Non Conveniens: A Doctrine in Search of a Role,* 74 Cal.L.Rev. 1259, 1282–86 (1986) (arguing that fact of defendant's residence in forum almost always will outweigh any argued inconvenience, especially when the defendant is an individual and not a corporation with multiple residences). Keeping in mind that the central purpose of the forum non conveniens doctrine "is to ensure that the trial is convenient," *Piper*

---

**6.** Numerous cases since *Gilbert* have held that foreign plaintiffs deserve less deference in their choice of forum than do citizens or residents of the United States. *See, e.g., Piper Aircraft,* 454 U.S. at 255–56, 102 S.Ct. at 265–66; *Wilson v. Humphreys (Cayman) Limited,* 916 F.2d 1239, 1246 (7th Cir.1990).

**7.** As stated in *Lehman:*

[C]ourts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such

discretion to deny a citizen access to the courts of this country.

713 F.2d at 342 (quoting *Founding Church of Scientology v. Verlag,* 536 F.2d 429, 435 (D.C.Cir. 1976)).

**8.** A corporate plaintiff's citizenship or residence may not correlate with its real convenience because of the nature of the corporate entity, while an individual's residence more often will correlate with his or her convenience. *See Rudetsky v. O'Dowd,* 660 F.Supp. 341, 346 (E.D.N. Y.1987) (Weinstein, C.J.).

*Aircraft,* 454 U.S. at 256, 102 S.Ct. at 266, it will be the rare case indeed when a case filed in the federal district where the defendant resides and in the home forum of the plaintiff is dismissed on the ground of forum non conveniens.

In granting the defendants' motion to dismiss, the district court noted that the plaintiff's American citizenship and defendants' residence in Missouri were "not particularly weighty, in light of the numerous factors which point to Jamaica as the most convenient forum for the resolution of this dispute." 715 F.Supp. at 272. This approach appears to shift the burden to the plaintiffs to convince the court that their forum choice is more convenient than the alternative forum. At least when the plaintiff is a U.S. citizen with a real interest in the controversy, the plaintiff's forum choice *always* should be accorded substantial deference at the outset. *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 45 (3d Cir. 1988). Only then should the district court analyze the *Gilbert* factors, keeping in mind that the defendant bears the burden of proof on each factor and must overcome the heavy presumption against disturbing the plaintiff's forum choice.

The district court's opinion accords little weight to the plaintiff's forum choice and the fact that both plaintiff and the defendants were American citizens. In this respect we find the district court's decision departs from this court's analysis in *Lehman v. Humphrey Cayman, Ltd.,* 713

F.2d 339 (8th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984).[9]

We turn now to the other key private and public interest factors.

## B. *Location of Key Witnesses*

■ The district court adopted the defendants' assertion, made in their motion to dismiss, that "[a]ll of the occurrence witnesses except plaintiffs reside in Jamaica and it would be prohibitively expensive to obtain their attendance in Missouri." 715 F.Supp. at 271. This analysis overlooks the obvious importance of the defendants as key witnesses. Although the Hansens spend part of the year in Jamaica, their home is in Missouri and they reside there for five to six months of the year. (App. 13). In addition, the district court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum. *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335–36 (9th Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). The burden is on the defendant to provide these facts by way of affidavit or other information. *See Piper Aircraft Co. v. Reyno,* 454 U.S. at 258, 102 S.Ct. at 267 (1981); *Lacey,* 862 F.2d at 44–45; *In re Air Crash Disaster Near New Orleans,* 821 F.2d at 1164–65 & n. 28. The Hansens have not submitted any information or affidavits to support their conclusory allegations.[10] The

---

**9.** The district court did not discuss this court's analysis in *Lehman.* In *Lehman,* the plaintiff was a citizen of Iowa and was suing Holiday Inns corporation and its foreign franchisee in the federal district in Iowa for damages arising from her husband's death while staying at the hotel during a vacation in the Cayman Islands. *Lehman,* 713 F.2d at 340. We held that the district court abused its discretion in dismissing the action on the ground of forum non conveniens. *Id.* at 347.

The dissent tries to diminish the similarities between *Lehman* and this case by noting that the plaintiffs in *Lehman* had a breach of warranty claim under Iowa law in addition to the tort claim governed by the law of the Cayman Islands. The dissent intimates that the logic in *Lehman* rests on the fact of this state law claim being included. A fair reading of *Lehman* refutes that notion. In addition, the Seventh Cir-

cuit recently relied on *Lehman* in retaining a suit based on an accident occurring outside the United States when the plaintiff's claim was exclusively governed by foreign law. *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239 (7th Cir.1990); *see also Bruemmer v. Marriott Corp.,* 1991 WL 30141 (N.D.Ill.1991) (relying on *Lehman* and specifically noting that the *Wilson* court followed the *Lehman* court's reasoning despite absence of state law claim).

**10.** The dissent correctly states that defendants need not submit overly detailed affidavits to carry their burden of persuasion. *Piper Aircraft,* 454 U.S. at 258, 102 S.Ct. at 267. The dissent, however, glosses over the fact that the Hansens submitted *no* affidavits or information other than the few conclusory points in their motion to dismiss. In *Piper Aircraft,* however, the defendants submitted affidavits describing

record does not indicate whether the driver of the boat that hit Reid–Walen has ever been identified. *Cf. Carter v. Trafalgar Tours, Ltd.*, 704 F.Supp. 673, 680 (W.D.Va. 1989) (record does not establish whereabouts of drivers of two vehicles involved in Austrian tourbus accident, demonstrating that record does not show that substantially more evidence is located in foreign forum). The record also does not reveal if Jamaican authorities ever investigated this accident, whether a report was made, or whether their testimony would be needed.

Reid–Walen points out that many of the occurrence witnesses who likely will be called are other guests who also were staying at the Yellowbird. She asserts, and the Hansens do not deny, that nearly all of the Hansens' guests come from the United States and Canada. Further, likely witnesses will include medical personnel from Florida and Minnesota who treated Reid–Walen. In addition, experts needed to testify about damages, such as the future costs Reid–Walen will incur as a result of the injury, will have to come from the United States. *See Rudetsky v. O'Dowd*, 660 F.Supp. 341, 347 (E.D.N.Y.1987) (Weinstein, C.J.). Finally, as a number of courts have discussed, the time and expense of obtaining the presence or testimony of foreign witnesses is greatly reduced by commonplace modes of communication and travel. *Lehman*, 713 F.2d at 343; *Manu Int'l*, 641 F.2d at 65. Any foreign witness testimony may be taken, if possible, by deposition or other means. *Lehman*, 713 F.2d at 343; *see* Fed.R.Civ.P. 28(b) and 29.

In sum, although the record is largely devoid of hard factual evidence, we can surmise that if this case proceeds to trial there are individuals from both the United States and Jamaica who likely will be called as witnesses. In whichever forum the case is tried, witnesses will have to travel or testify by deposition. If the suit is brought in the U.S., the parties will not have compulsory process over any Jamaican witnesses. By the same token, if the suit is brought in Jamaica, the parties will lack compulsory process over American witnesses. *See Verlag*, 536 F.2d at 436 (noting that the "risk that foreign evidence cannot be obtained is no greater in federal court in the District of Columbia" than in Germany because the parties will need witnesses from both countries). The defendants have not provided the court with any idea of what Jamaican witnesses it may wish to call. The Hansens have not established that there are clearly more key witnesses available in Jamaica, or that there would be a significantly greater problem in getting the testimony of the Jamaican witnesses if the case is tried in the United States than in getting the testimony of occurrence and medical personnel witnesses located in the United States if the case were tried in Jamaica. *See Lacey*, 862 F.2d at 47. As the *Lacey* court stated:

> [T]he defendants' failure to provide any record support for their contentions precluded the district court from scrutinizing the substance of the dispute between the parties and from determining whether evidence and arguments relied upon by the parties are critical or even relevant to the plaintiff's cause of action or the defendants' potential defenses.

*Lacey*, 862 F.2d at 45.

**C. *Access to Evidence and View of the Premises***

■ The district court also found that Jamaica provided ease of access to sources of proof and offered the only possible view of the premises. Neither the Hansens nor the district court have specified what sources of proof are available only in Jamaica. *See Gates Learjet Corp.*, 743 F.2d at 1336 & n. 5 (giving little deference to district court's consideration of this factor when court failed to identify what evidence

the evidentiary problems they would face if trial were held in the U.S. *Id.* at 259, 102 S.Ct. at 267. They also stated they would call as witnesses the persons responsible for training and licensing the pilot, the persons responsible for maintaining the aircraft, and two or three of its own employees involved in the design and manufacture of the aircraft. *Id.* n. 27. The Court merely held that specific names of the witnesses and the substance of their testimony need not have been submitted for the defendants to carry their burden of proof. The Court did not hold that *no* submission of information need be given.

was unavailable in the U.S.). Presumably, any records of safety precautions the Hansens did or did not undertake could be transported to Missouri. Neither the Hansens nor the district court indicated why a view of the premises would be necessary. *See Grimandi v. Beech Aircraft Corp.*, 512 F.Supp. 764, 779 (D.Kan.1981) (defendants did not establish that view of the premises was necessary and it was not apparent why it would be necessary). To the extent the parties wish to establish the physical layout of the cottages and the beach area where the accident occurred, they could do so accurately through aerial photographs and other demonstrative evidence or testimony. *Id.*

D. *The Defendants' Ability to Implead*

■ Although not a specific *Gilbert* factor, the ability of defendants to bring a third-party action against other alleged wrong-doers can be considered a private interest factor within the enumerated consideration of making a trial "easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843; *see Piper Aircraft*, 454 U.S. at 259, 102 S.Ct. at 267 (holding that inability to implead third-party defendants in federal court supported having trial in Scotland). The district court did not discuss this consideration, but the Hansens here assert that the inability to implead the driver of the boat who injured Reid–Walen in the Missouri forum supports dismissal.

In general, the efficiency and convenience of trying all actions arising from the same incident at one time and at one place often may be a factor pointing toward the foreign forum where the incident occurred and the third party is located. The courts that have considered this factor, however, have required a showing of actual convenience to the parties, not mere hypothetical discussion about the efficiency of third-party practice. *See id.; Lehman*, 713 F.2d at 343–44; *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 379 (2d Cir.1972). In *Piper Aircraft*, the Court found that joinder of potential third-party defendants was

"crucial to the presentation of [the defendants'] defense" because the defendants were arguing that all blame for the accident rested with the third parties, not with themselves. 454 U.S. at 259, 102 S.Ct. at 267. In contrast, the *Lehman* and *Olympic Corp.* courts found that the potential third-party claims were very different from the plaintiffs' claims and that it was not likely separate trials of the claims would require much duplication of proof or risk inconsistent judgments. *Lehman*, 713 F.2d at 343; *Olympic Corp.*, 462 F.2d at 379.

In this case, neither party disputes that the motorboat driver was the direct cause of the injuries to Reid–Walen. The plaintiff's allegations all go to the duty to provide a safe environment for swimming, which is an independent question from whether the boat driver was at fault for striking Reid–Walen. The Hansens have not alleged their defense would be greatly impaired without the ability to implead the boat driver. Although perhaps more inconvenient, the Hansens can pursue a separate indemnification action against the boat driver in the courts of Jamaica, if they know the driver's identity. *See Lehman*, 713 F.2d at 344.

E. *Plaintiff's Ability to Litigate in a Foreign Forum*

■ As part of the *Gilbert* private interest analysis, courts must be sensitive to the practical problems likely to be encountered by plaintiffs in litigating their claim, especially when the alternative forum is in a foreign country. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1246–47 (7th Cir.1990); *Lehman*, 713 F.2d at 345; *Manu Int'l*, 641 F.2d at 67; *Rudetsky*, 660 F.Supp. at 346. The district court "must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum." *Lehman*, 713 F.2d at 346. The district court failed to even consider this factor.[11]

---

**11.** The dissent misinterprets the thrust of our argument on this point. We, of course, do not

say that every American plaintiff should be able to litigate in the courts of the United States

The legal systems of Jamaica and the Cayman Islands—the alternative forum in *Lehman*—are very similar. *See Modern Legal Systems Cyclopedia: The Legal Systems of the Commonwealth Caribbean* ¶ 7.80.7 § 1.1 (1988) (K. Redden, ed.) (Jamaica and the Cayman Islands are part of the Commonwealth Caribbean, whose similar legal systems derive from those of Great Britain). Like the plaintiff in *Lehman*, Reid–Walen likely will be unable to get a jury trial in Jamaica. *See id.* at ¶ 7.80.44–45 § 1.3(F) (unless statute expressly preserves right to jury trial, there is no right to a jury trial in civil cases in Jamaica). The absence of a contingent fee system for attorneys in Jamaica also should be taken into account when considering the practical problems for the plaintiff. *Rudetsky,* 660 F.Supp. at 346. Reid–Walen contends she would not be able to afford an attorney in Jamaica. Her inability to retain counsel in the alternative forum is an important factor counseling against dismissal. *Id.* at 347; *see also Lehman,* 713 F.2d at 345–46.[12] In fact, Reid–Walen's counsel at oral argument stipulated that trying the case in Jamaica was so infeasible, both practically and financially, that Reid–Walen would not pursue the matter if unable to litigate in her chosen forum in the United States. In this case, the "alternative forum" is really not much of a forum at all. *See Manu Int'l,* 641 F.2d at 67.

## F. *Expectations of the Parties*

■ Although not a part of the formal *Gilbert* private interest analysis, the district court considered the parties' expectations about where they anticipated a suit such as this would be tried. The court found particularly persuasive the Hansens's claim that they had purchased liability insurance for their business that provides coverage and pays fees and expenses only if they are sued in the courts of Jamaica. The Hansens contend this evidences their expectation that they would be sued only in Jamaica for accidents arising out of their business in Jamaica.

Reid–Walen contends insurance coverage is not a factor to be taken into consideration in the *Gilbert* calculus. We agree with Reid–Walen that the terms and extent of insurance coverage should not be a formal or significant factor district courts need to consider.[13] The expectations of the parties, however, are relevant. In this

when U.S. courts offer the more attractive forum. Because the doctrine of forum non conveniens is to be an instrument of justice, however, courts must be sensitive to the realities of the plaintiff's position. An individual like Reid–Walen who was severely injured while on vacation is in a very different practical and economic position from a large multinational corporation engaging in worldwide business. Like all the factors, the plaintiff's ability to litigate in a foreign forum is simply one consideration.

12. In *Lehman,* we made clear that the procedural hurdles facing a plaintiff are distinct from the substantive law of the foreign forum. *Lehman,* 713 F.2d at 346. The Supreme Court has determined that a plaintiff's showing of less favorable substantive law in the alternative forum can be given some weight, but is not to be given conclusive or even substantial weight in the forum non conveniens analysis. *Piper Aircraft,* 454 U.S. at 247, 102 S.Ct. at 261. When, however, a foreign jurisdiction "has imposed such severe monetary limitations on recovery as to eliminate the likelihood that the case will [ever] be tried," *Irish Nat. Ins. Co., Ltd. v. Aer Lingus Teoranta,* 739 F.2d 90, 91 (2d Cir.1984), a court may justifiably take into account the realities of the foreign legal system. Although Reid–Walen is concerned about the amount a judge in Jamaica might be willing to award on her claim, she has not shown Jamaican substantive law imposes insurmountable barriers to an adequate recovery that make the alternative forum completely "unavailable." *See supra* note 2. As we conclude, however, Reid–Walen has demonstrated that procedural and practical barriers significantly impede her ability to litigate her claim in the Jamaican courts.

13. At least one court, however, has briefly discussed insurance as a relevant consideration. In *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147 (2d Cir.1981) (en banc), the plaintiff was complaining of damage to its pier in Trinidad, where it maintained a permanent business. *Id.* at 159. The court noted that the plaintiff "could have insured its additional risk in a prudent fashion. There is no reason to suppose that it has not done so." *Id.* The insurance at issue was that of the plaintiff, who was attempting to litigate its claim in the courts of the United States for damage to a stationary pier located in Trinidad, where it kept a permanent place of business. In contrast to the situation in *Alcoa,* Reid–Walen is a private individual who was enjoying a short vacation in Jamaica.

case, the Hansens' insurance coverage is a relevant indicator of expectations that the district court was correct to consider.

Unlike many other cases, the defendants are not part of a multinational business with sophisticated operations in both the United States and abroad. *Cf. Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1241 (7th Cir.1990) (one defendant (Holiday Inns) was a multinational corporation, and the other foreign defendant was a licensee of Holiday Inns and advertised extensively in the U.S.); *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 159 (2d Cir.1981) (en banc) (plaintiff was U.S. corporation maintaining permanent place of business in Trinidad). The lack of insurance coverage for suits filed in the United States demonstrates difficulties the Hansens face in defending a suit here. *See Lehman,* 713 F.2d at 347 ("even though considerations of fairness are more properly part of the jurisdictional analysis than of a forum non conveniens determination" some fairness factors "indicate the relative conveniences of the parties and their respective abilities to bring or defend against a lawsuit").

The Hansens' position is weakened by the fact that they reside and solicit business in the United States. Of course, the Hansens do not engage in the kind of sophisticated advertising and solicitation of travelers engaged in by large corporations. The Hansens, however, do belong to a travel booking agency in Florida that solicits and books reservations for its members. In addition, the Hansens accept reservations at their home in Missouri. Further, many of the guests of the Yellowbird come from the United States. It should not be a total surprise to the Hansens that they may be sued in the courts of the U.S. The Hansens likely could have purchased insurance without the restriction limiting coverage to suits brought in Jamaica.

In sum, we find the expectation of the defendants that they would only have to defend suit in Jamaica, evidenced by their restricted insurance coverage, as a factor weighing toward dismissal on the ground of forum non conveniens. Like all private interest factors, however, it is not dispositive.

We turn now to the *Gilbert* public interest factors.

### III. Public Interest Factors

#### A. *Interest of the Forum in the Dispute*

 The district court summarily concluded that it would be a burden to impose jury duty on the Missouri community because it has no significant relationship to the litigation. We must respectfully disagree. The State of Missouri, by virtue of the fact it is the defendants' home, has a significant interest in the litigation.

The defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens. Stewart, *Forum Non Conveniens: A Doctrine in Search of a Role,* 74 Cal.L.Rev. 1259, 1283 (1986). Any economic burden to the forum is justified because the defendant has undertaken both the benefits and burdens of citizenship and of the forum's laws. *Id.* at 1282, 1284. In this case, any burden to the community is tempered by the reality that the case is not complicated and likely will not result in a lengthy trial. *See Schexnider v. McDermott Int'l, Inc.,* 817 F.2d 1159, 1163 (5th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). In addition, when the only proper United States venue lies in this one district, the United States itself has an interest in the dispute and in seeing the plaintiff has a forum in this country. *See Lehman,* 713 F.2d at 344.

The district court did *not* find that Jamaica has a greater interest in this litigation, and it is clear that it does not. The incident at issue was a simple, albeit tragic, boating accident that was not a newsworthy event or of broad public interest in Jamaica. *See Grimandi,* 512 F.Supp. at 780 (noting that case is simple tort suit not affecting the broad public interest). Neither party to this litigation is a Jamaican citizen. "[I]n light of the unique relationship between the forum and the citizen-defendant, the assertion of jurisdiction cannot be said to deprive another forum with greater interest of the opportunity to re-

solve the dispute." Stewart, 74 Cal.L.Rev. at 1283. We conclude that Missouri has a stronger interest in this litigation than does Jamaica.

### B. *Application of Substantive Law*

 Applying Missouri's choice of law rules, the district court concluded Jamaican substantive law applied to this dispute, which neither party disputes.[14] In fact, Reid–Walen specifically bases her claim that the Hansens breached their duty of care on several Jamaican statutes. The district court did not conclude it would have particular difficulty applying Jamaican law. Jamaica's substantive law is descended from that of Great Britain, and contains concepts that are at least somewhat akin to our own. In addition, there is no language barrier to the district court understanding Jamaican law. *See Rudetsky*, 660 F.Supp. at 348 (holding that court should be less reluctant than usual to apply foreign law when there is no language barrier).[15]

Although the district court concluded that Jamaican law applies to this suit, it is well settled that the fact a federal court may have to apply foreign law is not dispositive on the forum non conveniens inquiry, and does not outweigh more significant private interest concerns. *See Lehman*, 713 F.2d at 345; *Manu Int'l*, 641 F.2d at 67–68; *Verlag*, 536 F.2d at 436.

### IV. Summary

We conclude that the district court erred in granting a dismissal based on forum non conveniens. Proper deference to the plaintiff's forum choice, where the defendants reside, coupled with the proper weighing of the *Gilbert* factors, requires reversal. Of particular significance is that the district court failed to consider the plaintiff's practical ability to litigate in the foreign forum. We also find the district court did not require the defendants to produce adequate

factual proof necessary to carry their burden of persuasion on some of the private and public interest factors. Although some of the factors favor Jamaica as the forum, the overwhelming weight of the factors point toward Missouri as the most convenient forum.

The "ultimate inquiry" in a forum non conveniens analysis is where the place of trial will "best serve the convenience of the parties and the ends of justice." *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). Dismissing this action would leave Reid–Walen with no practical and realistic alternative forum, while trial in Missouri would impose little inconvenience to the defendants. Such a result would hardly serve the ends of justice.

### CONCLUSION

The judgment of the district court dismissing this action is reversed, and the case is remanded for further proceedings.

TIMBERS, Circuit Judge, dissenting:

In reversing the district court today, the majority has found a United States forum for an American citizen. While the majority has fashioned a creative argument to achieve this result, I regret that I am unable to concur in its opinion. Since the majority merely substitutes its opinion for that of the district court and misconstrues the law of forum non conveniens in so doing, I respectfully dissent.

### I.

I turn first to the standard of review applied by the majority in reversing the district court. While the majority sets forth the standard a reviewing court applies to a district court's dismissal of an action based on forum non conveniens, it unnecessarily avoids meeting squarely the degree of deference accorded such determi-

---

**14.** Accordingly, that ruling is not before the court on this appeal.

**15.** As this court said in *Lehman*, "Federal courts are quite capable of applying foreign law when

required to do so.... '[W]e must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform.'" *Lehman*, 713 F.2d at 345 (quoting *Manu Int'l*, 641 F.2d at 67–68).

nations. In the interest of clarity, I reiterate the Supreme Court's holding in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257 (1981): "[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court." *See also Borden, Inc. v. Meiji Milk Prods. Co.,* 919 F.2d 822, 828 (2d Cir.1990) ("[w]e necessarily must place heavy reliance on the discretion of the district court in balancing the *Gilbert* factors"); *James v. Gulf Int'l Marine Corp.,* 777 F.2d 193, 194 (5th Cir.1985) (appeals court "may disturb the dismissal only upon a clear showing of abuse"); *Mizokami Bros., Inc. v. Mobay Chem. Corp.,* 660 F.2d 712, 718 (8th Cir.1981) (forum non conveniens evaluation "is addressed to the experience and insight of the trial judge and is within his initial discretion"); 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3828 (1986) ("[t]he scope of review of the action of the district court on a forum non conveniens motion is very narrow"). "It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves *substantial deference.*" *Piper Aircraft, supra,* 454 U.S. at 257 (emphasis added). The Supreme Court has emphasized that our role on appeal is not to "substitute[ ] [our] own judgment for that of the District Court". *Id.; see also In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1167 (5th Cir.1987) (en banc) ("our duty is not to perform a de novo analysis and make the initial determination for the district court"), *vacated on other grounds,* 490 U.S. 1032 (1989); Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747, 751 (1982) (as currently formulated, the standard of review articulated in *Piper Aircraft,* requires "almost complete obeisance to the district court['s]" balancing of the *Gilbert* factors).

## II.

I turn next to the majority's contention that the Hansens failed to carry their burden of persuasion. I disagree. The Supreme Court specifically has explained that submission of detailed affidavits is not necessary on forum non conveniens motions. *Piper Aircraft, supra,* 454 U.S. at 258; *see also Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 451 n. 3 (2d Cir.1975), *cert. denied,* 423 U.S. 1052 (1976); *Farmanfarmaian v. Gulf Oil Corp.,* 437 F.Supp. 910, 923–24 & n. 15 (S.D.N.Y.1977), *aff'd,* 588 F.2d 880 (2d Cir.1978). It is sufficient that the district court has adequate information to "balance the parties' interests". *Piper Aircraft, supra,* 454 U.S. at 258.

In the instant case, the relevant facts were not controverted. The defendants Leroy and Irene Hansen owned a hotel named the Yellowbird Sea–Tel in Jamaica. The plaintiffs, Jayne Reid–Walen and Gary Walen, vacationed at the Hansens' hotel. While swimming in the surf either directly adjacent to the hotel or somewhere nearby, Jayne Reid–Walen was struck by a motorboat operated by a Jamaican resident. In short, the district court had sufficient facts and information to determine whether this action for ordinary negligence, whose underlying predicate occurred in Jamaica, should be tried in the Eastern District of Missouri. I shall address specifically each instance of alleged inadequacy of factual proof in the context of the majority's analysis of the *Gilbert* factors.

## III.

This brings me to the majority's review of the district court's analysis of the public and private interest factors. I examine these factors in the light of the substantial deference normally accorded the district court's initial determination.

In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09 (1947), Justice Jackson fashioned the oft-quoted contemporary forum non conveniens analysis by enumerating numerous nonexclusive factors, both public and private, which a district court should consider when confronted with a motion to dismiss based on forum non conveniens:

"An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease

of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

These factors continue to govern all cases. *Piper Aircraft, supra,* 454 U.S. at 241 n. 6. Although the enumerated factors in *Gilbert* are not exhaustive, they have long provided courts with guidance when considering motions to dismiss based on forum non conveniens.

In what strikes me as an inappropriate and improper *de novo* review of the district court's application of the *Gilbert* factors, the majority supplants the district court's analysis of most factors with its own. In light of the Supreme Court's holding in *Piper Aircraft,* such usurpation of the district court's role is improper. Moreover, some of the propositions advanced by the majority lack either a factual or legal basis.

**Private Interest Factors**

*A. Plaintiff's Choice of Forum*

The majority first asserts that the district court accorded little weight to the plaintiff's choice of forum and to the citizenship of the parties. In so concluding, the majority misses the tenor of the district court's opinion. The district court expressly considered those factors and indeed stated that a plaintiff's choice of forum is entitled to "preference". The district court, however, found that numerous factors outweighed the plaintiff's choice of forum and favored Jamaica as the proper forum. In concluding that Jamaica was the most convenient forum, the district court rejected the "talismanic significance" attached by the majority to the plaintiff's choice of forum. The district court's conclusion is in accord with the recent trend of authority which has rejected attaching dispositive weight to the plaintiff's choice of forum. *E.g., Pain v. United Technologies Corp.,* 637 F.2d 775, 798 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128 (1981); *Alcoa Steamship Co. v. M/V Nordic Regent,* 654 F.2d 147, 155–57 (2d Cir.) (en banc), *cert. denied,* 449 U.S. 890 (1980); *Mizokami Bros., Inc. v. Baychem Corp.,* 556 F.2d 975 (9th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1035 (1978); *Mohr v. Allen,* 407 F.Supp. 483 (S.D.N.Y.1976). It has been recognized that American courts' continuing refusal to dismiss when events so warrant is based on our paternalistic attitude toward United States citizens and our condescending view of foreign courts. This problem has been succinctly summarized by Judge Wilkey:

"[f]ederal courts have recently begun to acknowledge that judicial unwillingness to dismiss actions to competent courts abroad on grounds of citizenship alone may merely reflect an unthinking

orientation overly protective of American plaintiffs—even those who reside abroad—and 'insufficiently sensitive to the ability of foreign courts to perform their adjudicatory functions fully as well as do the courts of the United States.' " *Pain, supra,* 637 F.2d at 796–97 (quoting Note, *Recent Developments, Federal Courts: Forum Non Conveniens,* 20 Harv.Int'l L.J. 404, 412 (1979)).

It also has been questioned increasingly, in circumstances mirroring those before us, whether deference should be accorded to a plaintiff's choice of forum at all. *Pain, supra,* 637 F.2d at 799; *see also* McAllen, *Deference to the Plaintiff in Forum Non Conveniens,* 13 S.Ill.L.J. 191, 259 (1989) ("[I]nternational forum non conveniens dismissals ought to be freely available when either the defendant or the cause of action is local, the case is governed by foreign law, and the alternate forum is a more convenient place for trial. In this rare class of cases, there is no practical or theoretical justification for deferring to the plaintiff's initial choice of forum.") [hereinafter McAllen]. Perhaps the best justification for deference to the plaintiff's choice of forum exists where the plaintiff's choice of forum is his "home forum", i.e., the forum in which he resides. McAllen, *supra,* at 212. (The majority's suggestion that a plaintiff's "home forum" is any district in the United States is not supported by any credible reading of *Gilbert* or its companion case, *Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524 (1947)). It is in that situation that chances of vexation, harassment or oppression alluded to by Justice Jackson in *Gilbert,* are at a minimum. McAllen, *supra,* at 212–13 & n. 89. Applying that principle here, there would be little reason to defer to the plaintiff's choice of forum. Missouri is neither the plaintiffs' "home forum" nor chosen forum.

In any event, "[a] citizen's forum choice should not be given dispositive weight". *Piper Aircraft, supra,* 454 U.S. at 255–56 n. 23; *see also Pain, supra,* 637 F.2d at 798 ("American citizens and residents have no indefeasible right of access to the federal courts"); *Vanity Fair Mills v. T. Eaton*

*Co.,* 234 F.2d 633, 645 (2d Cir.) (same), *cert. denied,* 352 U.S. 871 (1956). "As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft, supra,* 454 U.S. at 255–56 n. 23. The Supreme Court has made clear that the "deference accorded a plaintiff's choice of forum has never been intended to guarantee that the plaintiff will be able to select the law that will govern the case." *Id.* at 256–57 n. 24.

Since the district court here found that "numerous" factors favored Jamaica as the appropriate forum, it was proper that plaintiffs' choice of forum not be given dispositive weight. That the plaintiffs' choice of forum was actually the Southern District of Florida and not the Eastern District of Missouri merely buttresses this conclusion. If appellants are concerned with convenience, it seems that Jamaica is closer geographically to their initial choice of forum.

### B. *Location of Key Witnesses*

The majority next takes issue with the district court's conclusion that all *occurrence* witnesses except the plaintiffs are located in Jamaica. It asserts that the defendants have not carried their burden of proving that most witnesses are located in Jamaica. By this assertion, the majority would saddle a moving party with a greater burden than envisioned by the Supreme Court.

It is firmly established that defendants must only "provide enough information to enable the District Court to balance the parties' interests." *Piper Aircraft, supra,* 454 U.S. at 258. Indeed, the contention that affidavits of great detail were required to support a motion to dismiss based on forum non conveniens was specifically rejected by the Court. *Id.* Similarly, in *Fitzgerald, supra,* 521 F.2d at 451 n. 3, the court held that it was not an abuse of discretion "in failing to require detailed disclosure by the defendants of the names of their proposed witnesses and the substance of their testimony." *See also Far-*

*manfarmaian, supra,* 437 F.Supp. at 923 (since contracts were executed in Iran, it is reasonable to assume that evidence of the breach and major witnesses concerning the breach were in Iran). Through their submissions, the defendants here have satisfied the minimal threshold required by *Piper Aircraft.*

The Hansens asserted in their moving papers that all occurrence witnesses were located in Jamaica. This assertion was not controverted in Reid–Walen's opposition papers. Nor was it disputed in Reid–Walen's brief on appeal. Information concerning the identity of the driver of the boat, the investigating authorities, and witnesses to the accident, while presumably known to Reid–Walen, apparently was not available to the Hansens even up to the date of oral argument. At this stage of the litigation, where little if any discovery has been taken, it would "defeat the purpose of the[ ] motion" to require the moving party to submit affidavits detailing the exact witnesses to be called. *Piper Aircraft, supra,* 454 U.S. at 258.

Faced with seemingly uncontroverted facts in the context of a boating accident occurring in Jamaican waters, it was reasonable for the district court to have concluded that all occurrence witnesses were in fact located in Jamaica and that it would be "prohibitively expensive" to procure their attendance in Missouri. Contrary to the majority's assertion, there is nothing in the district court record that supports appellants' contention, first advanced at oral argument, that some occurrence witnesses reside in the United States. (The majority seized on a surmise advanced by appellants' counsel which was never before the district court. Counsel speculated that since many persons who stayed at Yellowbird were citizens of the United States or Canada, many witnesses to the accident also would reside in the United States.)

What the record does show, however, is that a *Jamaican* resident in fact caused the accident and is arguably one of the most important witnesses in this action. While the majority attempts to lessen the impact of this significant fact by asserting

that it is unclear whether the driver was ever identified, it is abundantly clear that he will not be found in the Eastern District of Missouri. On the other hand, the district court did find that Reid–Walen's hospitalization occurred in the United States. In recognizing this fact, the court implicitly acknowledged that most evidence and witnesses relating to damages are located in the United States.

That the district court ultimately accorded greater weight to occurrence witnesses in a negligence action is not unreasonable. *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335–36 (9th Cir.1984) (in examining this private interest factor, it is appropriate to examine the materiality and importance of the anticipated witnesses' testimony), *cert. denied,* 471 U.S. 1066 (1985). The court properly concluded that all occurrence witnesses—those witnesses in the best position to enlighten a court concerning the negligence determination—were in Jamaica. "[T]o fix the place of trial at a point where litigants cannot compel personal attendance [of significant witnesses] and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gilbert, supra,* 330 U.S. at 511. For these reasons, the district court's conclusion that the location of witnesses favored Jamaica was reasonable.

### C. *Access to Evidence/View of Premises*

Considering next a factor closely intertwined with the location of key witnesses, I address the majority's assertion that the district court erred in finding that access to evidence and a view of the premises favored Jamaica as the forum. The majority concludes that evidence located in Jamaica could be brought to the United States for trial. Although either side arguably could transport evidence to the other's forum, the majority's thesis does not render unreasonable the district court's conclusion that the bulk of the evidence relevant to the liability element of this negligence action is located in Jamaica. The Supreme Court recently stated, "[t]o examine 'the relative ease of access to sources of proof,' and the

availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required...." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988). With this guiding principle in mind, I turn to what sources of proof may be relevant in resolving this action.

For the purposes of this discussion, I recognize that Jamaican law is descended from the law of Great Britain. 1 Reynolds & Flores, Foreign Law, I Jamaica 1, 2–3 (1989) ("English legal heritage molds and still directs the Jamaican legal system"). I also take as true the majority's characterization of Jamaican law as substantively "akin to our own". *See generally* Geldart, Introduction to English Law 128–31 (9th ed.1984) (although notions of gross and slight negligence are not recognized under the English legal system, a duty of care is owed under the Occupiers' Liability Act and contributory negligence is recognized pursuant to statute). The instant action is one for negligence based on Jamaican common and statutory law. It arises from an accident which occurred in Jamaica and in fact was caused by a Jamaican citizen.

To the extent that a view of the premises would aid in the trial of any case, it certainly would be appropriate here. At issue is whether Reid–Walen was swimming in water adjacent to Yellowbird or perhaps elsewhere; the precautions taken by the Hansens in ensuring a safe swimming environment; and whether the accident occurred in the area provided for passage of boats under Section 10 of the Beach Control Act.

Another significant issue is what safety measures are reasonable under the Occupiers' Liability Act. According to the plaintiffs' amended complaint, this Jamaican statute requires that the Hansens take "such care as in all circumstances of the case is reasonable to see that Plaintiffs were reasonably safe in using the premises for the purposes for which they were intended or permitted by the occupier...." To determine what standard of care is reasonable under both this statute and common law, I assume that testimony of other Jamaican hotel operators and residents is necessary. *Cf. Williams v. Employers Liability Assur. Corp.*, 296 F.2d 569, 574 (5th Cir.1961) (plaintiff seeking damages for violation of duty to furnish safe premises for invitees carries burden of proof as in an ordinary negligence action), *cert. denied*, 371 U.S. 844 (1962). Furthermore, the question of whether "motorboats are frequently driven through the swimming area behind the Yellowbird", as alleged by plaintiffs, would require testimony from local residents. Evidence of other boating accidents in close proximity to the Yellowbird also would be relevant to this action. *Cf. Kanelos v. Kettler*, 406 F.2d 951 (D.C. Cir.1968) (evidence of other accidents is admissible for its tendency to show a dangerous condition at location where accident at issue occurred). Finally, to the extent that there was any investigation of the incident, those records and the investigating authorities certainly would be located in Jamaica. On the other side of the equation, Reid–Walen's medical witnesses and other documentary evidence, which are located in Florida and Minnesota, would have to travel a significant distance whether the action was in Missouri or Jamaica. Thus, it is not clear to me that Missouri is any more convenient than Jamaica in terms of providing ease of access to sources of proof relating to damages.

In negligence actions such as the instant one, courts have held consistently that trial in the foreign forum would present fewer evidentiary problems. In *Piper Aircraft*, several persons were killed when an airplane crashed in Scotland during a chartered flight. The decedents' heirs commenced a wrongful death action in the United States against a Pennsylvania plane manufacturer and an Ohio propeller manufacturer. In dismissing the action on forum non conveniens grounds, the district court found that, although records concerning design, manufacture and testing of the plane and propeller were located in the United States, more significant evidence including witnesses who could testify about the maintenance of the plane, the training of the pilot, and the investigation of the accident were all located in Scotland. 454 U.S. at 242. The district court also con-

cluded that trial would be aided by familiarity with Scottish topography, and by easy access to the wreckage. In upholding the district court's dismissal of the United States action, the Supreme Court held that it was not unreasonable to conclude "that fewer evidentiary problems would be posed if the trial were held in Scotland". *Id.* at 257–58. Indeed, the Court acknowledged that a "large proportion" of the evidence relevant to the negligence claim was located in Great Britain. *Id.* at 258; *see also Pain, supra,* 637 F.2d at 786–87 (relative ease of access to sources of proof favored foreign forum where helicopter crash at issue occurred in foreign forum and demonstrative, documentary, and testimonial evidence was located in the foreign forum); *Dahl v. United Technologies Corp.,* 632 F.2d 1027, 1030–31 (3d Cir.1980) (same).

I fail to see a valid distinction between those cases and the one before us. Since this simple negligence action requires proof indigenous to Jamaica, the district court reasonably concluded that this factor favored Jamaica as the proper forum.

### D. *Impleader*

This brings me to the majority's treatment of the impleader issue. While the majority acknowledges that the ability to implead a third-party can be considered a private interest factor, it then concludes that the Hansens can pursue a separate indemnification action against the boat driver in the courts of Jamaica. The majority dismisses the burden of litigating in two forums as "perhaps more inconvenient".

The Supreme Court specifically rejected this logic in *Piper Aircraft.* There, the Court determined that if the defendants (manufacturers) could show that the third-party defendant (the pilot of the crashed plane) was negligent, the defendants would be relieved of liability. *Piper Aircraft, supra,* 454 U.S. at 259. The Court agreed that relegating the defendants to a separate action for indemnity would be "burdensome" and far less convenient. *Id.* "Finding that trial in the plaintiff's chosen forum would be burdensome", the Court held, "is sufficient to support dismissal on

grounds of forum non conveniens." *Id.; see also Dahl, supra,* 632 F.2d at 1031 (" 'inability to implead other parties directly involved in the controversy is a factor which weighs against the retention of jurisdiction' " (quoting *Fitzgerald, supra,* 521 F.2d at 453)).

Similarly, in the instant action, if the Hansens can prove that the operator of the boat was the proximate cause of Reid–Walen's injuries, they could be relieved of liability. *Piper Aircraft, supra,* 454 U.S. at 259; *see generally* Prosser and Keaton, Torts, 263–319 (5th ed. 1984). Joinder of the boat operator therefore would be crucial to the Hansens' defense. *Id.* To suggest, as the majority does, that the third-party claim against the Jamaican boat operator presents an independent question is not supported by a reading of the record and relevant authorities. Both claims arose from the same occurrence. In that situation, the question of what liability is attributable to each party ordinarily should be resolved in one action. *E.g., Ford Motor Co. v. Milby,* 210 F.2d 137, 139 (4th Cir.1954) ("only very unusual circumstances would justify the court in denying the joinder of one whose negligence is alleged to be the basis of liability of the defendant named"). Trying two separate actions here would involve duplication of evidence, possibility of inconsistent verdicts, and a sharp increase in expenses. Contrary to the majority's conclusion, trying two separate cases would increase the Hansens' burden sufficiently to support dismissal on grounds of forum non conveniens. *Piper Aircraft, supra,* 454 U.S. at 259.

### E. *Other Practical Problems*

I turn next to the majority's enumeration of other "practical problems" that make trial of the case in Missouri "easy, expeditious, and inexpensive". The majority asserts that the district court erred in not considering Jamaica's lack of jury trials and contingent fee system as factors favoring Missouri as the proper forum. This assertion is based in part on Reid–Walen's contention at oral argument that it would

not be worth commencing an action in Jamaica.

In elevating the advantages of our American system of justice to a *Gilbert* factor apart from the deference normally accorded plaintiff's choice of forum, the majority in effect is saying that a United States' citizen-plaintiff will rarely, if ever, have to travel abroad to litigate a claim. I agree that our system of justice is unparalleled in the advantages it offers plaintiffs. Contingent fees, jury trials, increased damage awards, expanded scope of discovery, and substantive law favorable to plaintiffs (strict products liability and punitive damages) are attributes that seldom are found in foreign fora. *Piper Aircraft, supra,* 454 U.S. at 252 n. 18; Note, *Foreign Plaintiffs and Forum Non Conveniens: Going Beyond Reyno,* 64 Tex.L.Rev. 193, 196–204 (1985). What troubles me is that the majority attaches "particular significance" to the district court's failure to consider this factor separately. Examining the majority opinion as a whole, this putative omission appears to be its chief point of disagreement with the district court's opinion.

Since these factors bear little relation to convenience, I question whether they should be accorded independent weight at all in the balancing of *Gilbert* factors. These factors are already given significant weight when we accord deference to a plaintiff's choice of forum. *See Piper Aircraft, supra,* 454 U.S. at 256–57 n. 24. When a plaintiff chooses a forum, we must assume that it is the most attractive forum available to him. *See id.* It is redundant therefore to weigh significantly the procedural advantages of our system of justice again in the balancing of *Gilbert* factors.

Several courts appear to acknowledge this redundancy. In *Macedo v. Boeing Co.,* 693 F.2d 683, 687–88 (7th Cir.1982), the court considered the procedural differences between Portuguese and American courts. It found that Portugal lacked jury trials, contingent fee arrangements, punitive damages, and sophisticated discovery procedures. *Id.* The court also stated that a plaintiff must make a substantial prepay-

ment of costs in Portugal. *Id.* at 688. Nevertheless, the court held that the weight accorded these procedural disadvantages "should ordinarily not be conclusive or even substantial". *Id.* Similarly, in *Alcoa Steamship,* citing a long line of authority, the court stated that "[i]t is abundantly clear ... that the prospect of a lesser recovery does not justify refusing to dismiss on the ground of forum non conveniens." 654 F.2d at 159. *Piper Aircraft* also is instructive in this regard. Although *Piper Aircraft* held that a plaintiff may not defeat a motion to dismiss based on forum non conveniens merely by showing that the substantive law of the foreign forum is less favorable, its analysis is germane in the instant circumstances:

> "[B]y holding that the central focus of the forum non conveniens inquiry is convenience, *Gilbert* implicitly recognized that dismissal may not be barred solely because of the possibility of an unfavorable change in law. Under *Gilbert,* dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice. If substantial weight were given to the possibility of an unfavorable change in law, however, dismissal might be barred even where trial in the chosen forum was plainly inconvenient."

*Piper Aircraft, supra,* 454 U.S. at 249 (footnotes omitted).

Finally, the concept of according significant weight to procedural advantages of our judicial system is one of dubious origin. Its genesis was this court's opinion in *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 346 (8th Cir.1983), *cert. denied,* 464 U.S. 1042 (1984). There, relying on *Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 67 (2d Cir.1981), we concluded that "[t]he court must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum." *Lehman, supra,* 713 F.2d at 346. *Manu International,* however, addressed these considerations only

in the context of an alternative forum's adequacy. 641 F.2d at 67. The Supreme Court's subsequent holding in *Piper Aircraft* redefined the parameters of the adequacy inquiry. *Piper Aircraft* made clear that a forum generally is adequate where the defendant is amenable to process, it permits litigation of the subject matter of the dispute, and there is "no danger that [a plaintiff] will be deprived of any remedy or treated unfairly." 454 U.S. at 254–55 & n. 22. Here, in light of the contingent nature of the dismissal, there is little question that Jamaica is an "adequate" forum under *Piper Aircraft*. Indeed, the majority does not take issue with the district court's finding that Jamaica was adequate.

The majority's reliance on *Irish National Insurance Co. v. Aer Lingus Teoranta*, 739 F.2d 90, 91 (2d Cir.1984), also strikes me as misplaced. In a footnote to the instant majority opinion, *Aer Lingus* is cited for the proposition that when a foreign jurisdiction " 'has imposed such severe monetary limitations on recovery as to eliminate the likelihood that the case will [ever] be tried,' ... a court may justifiably take into account the realities of the foreign legal system." By culling that proposition from a passing reference made by the court in *Aer Lingus*, the majority has misconstrued the holding in that case. Judge Van Graafeiland did lament about the "Kafkaesque quality" of the district court's decision which resulted in dismissing a case to a foreign jurisdiction where recovery was limited to $260. *Id.* He did not take issue, however, with the district court's adherence to *Alcoa Steamship*, 654 F.2d at 159, where an en banc panel of the Second Circuit concluded that the possibility of a lesser recovery would not preclude dismissal on the ground of forum non conveniens. *Id.* Instead, the court held, in part, that the district court erred in failing to apply the same forum non conveniens standard to the appellant, a foreign insurance company, as it would have applied to a United States citizen. *Id.* at 92 (holding compelled by international treaty). Inasmuch as Judge Van Graafeiland's fleeting commentary may embody his own personal views on the subject of dismissing to foreign forums, it does not represent the law of the Second Circuit. (He was one of the dissenters in the *Alcoa Steamship* en banc opinion). It certainly does not support the significant weight attached by the majority here to the procedural advantages of our judicial system.

In short, taken to its logical conclusion, the majority's holding renders the doctrine of forum non conveniens a nullity in actions involving American plaintiffs facing the spectre of litigating in a foreign forum. Since the United States judicial system inevitably will be the most attractive forum, dismissal by a district court will seldom be appropriate under the majority's analysis. For this reason, I do not believe the significant weight attached to this "practical consideration" by the majority is either necessary or appropriate. I therefore would hold that the district court did not err in failing to consider the attractiveness of our judicial system as a separate factor.

Having concluded that the district court properly balanced the private interest factors, I now turn to the public interest factors.

**Public Interest Factors**

A. *Interest of the Forum in the Dispute*

I begin by addressing the majority's strained characterization of Missouri's interest in the dispute. By virtue of the Hansens' residence in Missouri for five months of the year, the majority concludes that Missouri has a stronger interest in this litigation. In reaching this conclusion, the majority rejects the district court's finding that it would be burdensome to impose jury duty on Missouri since it has "no significant relationship to this litigation".

In my view, the same factors which render this litigation burdensome to the Missouri community convincingly indicate the absence of a local interest in this action. The underlying accident occurred in Jamaica's territorial waters. It was caused by a Jamaican citizen as a result of his soliciting hotel guests for a motorboat outing in close proximity to the beach. Injury resulted to a tourist visiting the island. Since

such injuries may have serious impact on the tourist industry, Jamaica has a strong local interest in seeing that tourists are protected while visiting the country and that local laws designed to protect tourists are enforced. *See* The Europa World Year Book 1448–60 (1990) (over one million tourists visited Jamaica in each of the last three years; "[e]arnings from tourism increased in 1989 to an estimated [$550 million], equivalent to some two-thirds of the value of total commodity exports"). Local prosecution of this action also would allow other hotel operators to determine the precautions which must be taken to avoid liability under the Occupiers' Liability Act. *Gilbert, supra*, 330 U.S. at 509 ("[i]n cases which touch the affairs of many persons, there is reason for holding trial in their view"). In light of these factors, Jamaica has the stronger interest in this litigation. As the Court emphasized in *Gilbert*, there is "a local interest in having localized controversies decided at home." 330 U.S. at 509. I fail to see the appropriateness of subjecting Missouri, which has virtually no connection to this litigation, to the burdens of jury duty and the administrative difficulties attendant with trial. *Pain, supra*, 637 F.2d at 793 (there is "no reason why retention of jurisdiction is compelled ... when it is apparent that this forum is one of the least convenient forums imaginable").

The majority also says that the United States itself has an interest in seeing that the plaintiffs have a forum in this country. This theory has been accorded little weight when addressed by other courts in similar contexts. *Id.* at 792–93; *Dahl, supra*, 632 F.2d at 1032. To the extent that the United States has any interest in providing the plaintiff with a forum in this country, Jamaica's interest in having a localized controversy decided at home outweighs the United States' *de minimis* interest in this litigation.

I would hold that the district court reasonably concluded that this factor favored Jamaica as the proper forum.

### B. *Application of Substantive Law*

The majority accedes in what is not disputed by any party to this action—that the law to be vindicated is that of Jamaica. Nevertheless, the majority contends that the district court did not conclude that it would have difficulty in applying Jamaican law.

In *Piper Aircraft*, the Court held that "the need to apply foreign law pointed towards dismissal". 454 U.S. at 260. There is an "appropriateness ... in having the trial of a ... case in a forum that is at home with the ... law that must govern the case". *Gilbert, supra*, 330 U.S. at 509; *see also Calavo Growers v. Belgium*, 632 F.2d 963, 967 (2d Cir.1980) ("the likelihood that [foreign] law would govern ... lends weight to the conclusion that the suit should be prosecuted in that jurisdiction"), *cert. denied*, 449 U.S. 1084 (1981). That an American court can interpret foreign law does not get around the fact that application of foreign law strongly favors dismissal. Nor does such a conclusion adequately address Jamaica's strong interest in vindicating its own statutes.

By engaging in analytical confusion, the majority seeks to diminish the importance of this factor. I concede that, like all other factors, the fact that Jamaican substantive law governs this dispute is not dispositive. Pronouncements by the Supreme Court, however, indicate that when foreign law must be applied dismissal is appropriate. Whether or not the district court concluded that it could apply Jamaican law therefore is irrelevant. Jamaica has a strong interest in vindicating its local law.

I would hold that the district court properly concluded that this factor favored Jamaica as the forum.

### IV.

Notwithstanding the majority's *de novo* analysis of each *Gilbert* factor, the appropriate question to be asked on review is whether the district court's balancing of the *Gilbert* factors was reasonable. I would answer that question in the affirmative. Had the majority felt constrained to evaluate the district court's opinion in light of the standard of review set forth in *Piper Aircraft* and the relevant factors articu-

lated in *Gilbert*, I believe that it would have reached the same conclusion. A brief revisit to the district court's decision demonstrates that, not only was its conclusion as to each factor reasonable, but that its ultimate balancing of the *Gilbert* factors was reasonable.

After acknowledging the preference normally accorded a plaintiff's choice of forum, the district court properly enumerated the *Gilbert* factors. In applying *Gilbert*, the court found that numerous factors pointed to Jamaica as the most convenient forum: (1) all relevant events, with the exception of Jayne Reid–Walen's hospitalization, occurred in Jamaica; (2) all of the occurrence witnesses resided in Jamaica and it would be "prohibitively" expensive to procure their attendance in Missouri; (3) defendants were subject to process in Jamaica; (4) defendants' business insurance would pay for expenses and fees only if the action was brought in the Jamaican courts; (5) compulsory process for the attendance of witnesses was available in Jamaica; (6) ease of access to sources of proof and a potential view of the premises favored Jamaica as the forum; (7) Jamaican law governed the tort action; and (8) a Missouri forum would burden that community with jury duty when it has no relationship to the action. By contrast, the court concluded that only two factors favored litigation in Missouri: the plaintiffs' United States citizenship and the defendants' residence in Missouri for five months of each year. In view of the abundance of factors favoring Jamaica as the most convenient forum, and the relatively few factors pointing toward Missouri as the appropriate forum, the court concluded that dismissal was proper.

Not mentioned by the district court, but surely pertinent in determining whether its ultimate conclusion was reasonable, are other relevant factors which militated in favor of dismissal: a Jamaica forum would allow the Hansens to implead the third party boat operator, who irrefutably drove the boat which struck Reid–Walen and who ultimately may be liable for her injuries; and, since the accident occurred in its territorial waters, close to its beaches, and resulted in injuries to a tourist, Jamaica has a strong local interest in the outcome of this litigation. *Piper Aircraft, supra,* 454 U.S. at 260.

In short, the court analyzed the appropriate factors and concluded that Jamaica was the proper forum. Further, consistent with our holding in *Mizokami Bros., supra,* 660 F.2d at 719, dismissal of the action was subject to certain conditions: (1) that the Hansens consent to submit to the jurisdiction of the Jamaica courts; (2) that the Hansens waive any statute of limitations; (3) that the Hansens agree to make available in Jamaica all witnesses and documents within their control; and (4) that the Hansens agree to satisfy any judgment awarded in Jamaica courts to the maximum limits of their assets, including insurance coverage. These conditions assured that appellants would not be deprived of an adequate alternate forum.

In view of the great weight of factors in favor of dismissal, the district court opinion was in accord with those of other courts that have relegated to foreign forums plaintiffs who have commenced actions in the United States. *Piper Aircraft, supra,* 454 U.S. 235; *Pain, supra,* 637 F.2d 775; *Dahl, supra,* 632 F.2d 1027; *Alcoa Steamship, supra,* 654 F.2d 147; *Mizokami Bros., supra,* 556 F.2d 975.

To the extent that the majority believes that *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339 (8th Cir.1983), *cert. denied,* 464 U.S. 1042 (1984) is controlling, it is appropriate to point out the numerous differences between the two cases. Perhaps the most persuasive reason for concluding that *Lehman* is not controlling here is that Jamaica's law obviously should be applied to the appellants' *negligence* claim. Restatement (Second) of Conflicts of Laws §§ 145 & 146 (1969). Unlike *Lehman*, there are no state law warranty claims at issue here. The only law at issue is that of Jamaica. *Lehman* was instructive on the appropriate forum in such a circumstance: a finding that a particular jurisdiction's substantive law is controlling "would weigh in favor of trial [in that jurisdiction]". *Lehman, supra,* 713 F.2d at 345. Absent similar state law warranty claims,

there are no countervailing reasons for allowing this action to continue in Missouri. Missouri is not Reid–Walen's choice of forum, nor is it her place of residence. There are no witnesses or documentary evidence in Missouri. Nor is there evidence that appellees advertise in Missouri. Moreover, unlike the Holiday Inn in *Lehman*, appellees here are not an international corporation with other contacts in Missouri.

In short, Missouri has no interest in the dispute other than the part-time resident status of appellees. As the district court properly concluded, it would be inappropriate to impose jury duty on Missouri under these circumstances in light of Jamaica's significant interest in the litigation.

### V.

To summarize:

When an action is dismissed on grounds of forum non conveniens, our role on review is not to ascertain whether we would reach the same result if we were sitting on the district court, but, rather, to determine whether the district court's balancing of the *Gilbert* factors was reasonable. If the district court's balancing of all the relevant factors was reasonable, it has not abused its discretion.

The majority has lost sight of our role as a reviewing court in its quest to find a United States forum for the plaintiff. It merely has substituted its analysis of the *Gilbert* factors for that of the district court and in so doing has strained to the breaking point the law governing forum non conveniens dismissals. Since I would hold that the district court's balancing of the *Gilbert* factors was reasonable, the dismissal of this action on the ground of forum non conveniens should be affirmed. From the majority's refusal to do so, I respectfully dissent.